## WILL E. RICHEY AND LOUIS K. RENCH v. PAUL J. DAEMICKE.

*Sale—Warranty—Parol evidence.*

1. The mere exhibition of testimonials by a dealer on the sale of goods cannot be considered as a warranty that they shall conform to such testimonials, unless there is something said which expressly or impliedly guarantees that the goods shall equal in quality or performance the praise of the testimonials.

2. A guaranty attached to a bill of goods, insufficient in itself to constitute an agreement, will not be considered the entire contract between the parties, when the contrary is conclusively shown; citing *Phelps v. Whitaker*, 37 Mich. 72.

Error to Cass. (O'Hara, J.) Argued May 19, 1891. Decided July 28, 1891.

*Assumpsit.* Defendant brings error. Reversed. The facts are stated in the opinion.

*Spafford Tryon,* for appellant.

MORSE, J. The plaintiffs commenced suit in justice's court, and declared verbally against the defendant as follows:

"On the common counts in *assumpsit,* and particularly on the contract of warranty of the sale of the cooler, which said cooler was sold on or about the 12th day of March, 1888, for a certain price or sum of money, to wit, $155, to be paid therefor, and that the said defendant undertook there and then, and faithfully promised the said plaintiffs that said cooler would keep fresh meats four weeks, or a satisfactory length of time, if properly iced and regulated; and the said plaintiffs aver that they, confiding in the promises and undertakings of the said defendant, did on the 12th day of March purchase the said cooler as above said, and paid him the said $155."

The declaration further avers that the said "Butcher Boy Cooling Room" would not keep fresh meats four weeks, or a satisfactory length of time, if properly iced and regulated, but, on the contrary, was worthless, and became and was of no use to plaintiffs, to their loss and damage in the sum of $300. The plaintiffs obtained judgment in justice's court, which, on appeal to the circuit, was affirmed.

It appears that one of the plaintiffs went to the business place of defendant in Chicago, Ill., and there made an agreement for the cooler, which was to be built of the special dimensions directed by the plaintiffs, and for their special use, to be set up in their place of business at Dowagiac, Mich. It was to be put on the cars at Chicago "free," and shipped to Dowagiac, Mich. Fifty dollars was paid down in cash upon it, and the balance was given in two notes of the plaintiffs, when it arrived at Dowagiac. When the defendant shipped it, he mailed the following bill to plaintiffs, which was received and retained by them:

"52 State St., CHICAGO, ILL., 3–22–1888.

"Mr. RICHEY & RENCH, Dowagiac, Mich.:

| | |
|---|---|
| 1 6x8 ft. cooling room, as ordered | $155 00 |
| Rebate | 7 50 |
| | $147 50 |
| Cr.   By cash | 50 00 |
| | $97 50 |

"Guaranty:

"The above cooling room is guaranteed to keep fresh meat a satisfactory length of time, if properly iced and regulated.

"PAUL J. DAEMICKE."

The defendant claimed that this was the written contract of sale, and objected to any testimony on the part of the plaintiffs of the oral agreement at Chicago, at the time of the purchase of the cooler; citing *Nichols, Shep-*

ard & Co. v. Crandall, 77 Mich. 401. We do not think the guaranty attached to this bill can be considered the whole contract between the parties. It was not sufficient in itself to constitute an agreement, and did not, as conclusively shown, embody the whole of the contract. It is governed by the case of *Phelps v. Whitaker*, 37 Mich. 72. See, also, cases·cited in note to that case.

But the case must be reversed for an error that goes to the vitals of the plaintiffs' case. The theory of the declaration, and the charge of the court to the jury, proceeded upon the idea that the defendant warranted the cooler—

"To keep fresh meats *four weeks*, or a satisfactory length of time, if properly iced and regulated."

There was no evidence in the record tending to show any such warranty. The plaintiffs' counsel in the outset stated that they did not rely upon the guaranty attached to the bill of the cooler, but that they relied upon the conversation and representations made at the time it was purchased. One of the plaintiffs, William Richey, testified that he went to Chicago, and called upon the defendant. Defendant took him up-stairs, and showed him his cooler. Defendant "told him what they would guarantee they would do. I thought his cooler the best. He showed me a circular." What the circular was does not appear in the record, unless it was composed of the following testimonials, which were introduced in evidence:

"TESTIMONIALS.

"SUTTON, NEB., Nov. 18, 1887.
"PAUL J. DAEMICKE,—
"*Dear Sir* Referring to Butcher Boy Cooling Room, sent last spring, it is a number 4, 8x18 feet. After once filled, will take 250 to 300 pounds ice per day to run it in warm weather It holds about four beeves, with customary other kinds of meats, and will keep meats in good condition at least four weeks. I am much pleased with

the cooler, and consider it the best I have used, as the meats keep sweet and sound as long as I care to keep them.

　　　　　　"Yours truly,　　　　　, HENRY BOEHM.

　　　　　　　"CASCADE, WIS., Dec. 2, 1887.
"PAUL J. DAEMICKE:

　"In reply to yours, I would state your cooler works well, and I wish I had bought one two feet larger. If well filled with ice, I can keep meats as long as I please in the finest condition.

　　　　　　"Yours respectfully,　　　E. H. O'HEARN."

Richey testified that defendant called his attention to these testimonials in the circular. He was then asked:

　"Q. What else, if anything, did he state to you at that time about the quality of the cooler?

　"A. He said that his triple pans was the only cooler in the world that would keep meat any length of time properly."

The witness testified that in making the purchase he did not rely upon the examination he made of the cooler (he testified he examined it), but did rely upon these said representations made by the defendant. All of said testimony was objected to by defendant's counsel as not competent, and that the writing contained the final agreement of the parties. The objections were over-ruled, and the testimony received against defendant's objection, and exception taken. The witness further testified that he at the time purchased the cooler of the defendant.

　"Q. You may state the terms. [Objected to by the defendant's counsel as incompetent; that the contract was in writing. Objection overruled. Defendant excepts.]

　"A. The cooler was to be delivered to me inside of three weeks. The payments were to be, $50 down and a rebate of $7.50. I was to have three and five months for the payment of two notes, to be given for $48.75 apiece. The cooler was delivered at Dowagiac, but later than the date agreed upon. It was delivered free on board cars at Chicago. I paid the freight."

This is the whole of the testimony of a warranty. It will be clearly seen that the warranty relied upon was the testimonials shown him by defendant. There is no evidence of the defendant making any other warranty in this conversation, except " that his triple pans was the only cooler in the world that would keep meat any length of time properly;" and this was probably a mere expression of opinion, rather than a warranty. At any rate, it is not relied upon in this suit as a warranty. It is not shown in the record that the coolers mentioned in these testimonials were of the same dimensions as the one purchased by plaintiffs, or that the letters were not true statements as to the coolers purchased and used by the writers, unless the second one carries its own refutation on its face, that fresh meat could be kept as long as the writer pleased. Nor is there any evidence that the defendant adopted the language of these testimonials, or either of them, as his own, and warranted this particular cooler to keep meats as long as those were said to have kept such meats in the testimonials. The mere showing of such testimonials by a dealer in the attempt to sell his goods, or in the sale of them, cannot be considered as a warranty that the goods sold shall conform to such testimonials, unless there is something said which expressly or impliedly guarantees that they shall equal in quality or performance the praise of the testimonials. Nothing of the kind was shown in this case. The jury, therefore, should have been directed to find a verdict for the defendant.

Other errors are assigned, but, as they are not likely to arise upon another trial, we shall not discuss them.

The judgment below is reversed, and a new trial granted, with costs of this Court to defendant.

CHAMPLIN, C. J., LONG and GRANT, JJ., concurred. McGRATH, J., did not sit.