INTERNATIONAL TEXT-BOOK CO. *v.* MARVIN.

1. CONTRACTS—FRAUDULENT REPRESENTATIONS—EVIDENCE—LEGAL EFFECT OF STIPULATIONS—PAROL EVIDENCE.

Under the terms of a contract to provide instruction in mechanical drawing by correspondence to defendant, by plaintiff, in an action for the stipulated price remaining unpaid, evidence of defendant was not competent to show that the agent who procured his signature to the agreement falsely represented that the contract was one for mechanical en-

gineering, that defendant need not continue the course if he was unable to do so; no testimony tending to vary or contradict its terms was admissible.

**2. SAME—DECEIT—APPEAL AND ERROR—DAMAGES.**

The contention that it was a fraud to induce a working man with a family to undertake a course in engineering by correspondence could not be considered on error, in a case in which the contention was not urged on the trial; nor could defendant insist that plaintiff was only entitled to nominal damages after proceeding on the theory below that plaintiff was entitled to the damages claimed if the contract bound defendant.

**3. SAME—BREACH—DAMAGES.**

Notwithstanding a proviso in the contract that when accepted by the plaintiff it should not be subject to cancellation nor could defendant require any part of his payments to be returned, the damages recoverable were those occasioned by the breach, not the entire price.

Error to Wayne; Murphy, J. Submitted June 6, 1911. ( Docket No. 1. ) Decided September 29, 1911.

Assumpsit by the International Text-Book Company against Norris E. Marvin on a contract of subscription to a correspondence course. Judgment for defendant. Plaintiff brings error. Reversed.

*Choate, Webster, Robertson & Lehman* (*Otto Kirchner* and *David C. Harrington,* of counsel), for appellant.

*Thomas L. Dalton* (*James S. Doyle,* of counsel), for appellee.

Defendant signed a paper, partly printed, partly written, headed:

".Do not sign this subscription without reading it. It is subject to acceptance by the company at Scranton, Pa., and agents are not authorized to change its conditions "— and reading: "I hereby subscribe for a scholarship in the International Correspondence Schools, covering a course of correspondence instruction in mechanical drawing with mathematics," etc.

The price agreed to be paid was $73.60, payable $5 on signing subscription and $5 monthly thereafter. Defendant paid $5 and no more. He received by mail a certificate of enrollment and, later, some instruction papers. He returned such papers to the office of the plaintiff in Detroit and declined to pay more or to pursue the course.

Suit was begun in justice's court and an appeal taken to the circuit court. The action was assumpsit; the declaration alleging, among other things, that plaintiff had exercised its contract option to declare the balance unpaid on the contract to be due and payable, and had demanded payment accordingly. With his plea defendant gave notice that he would show that there was fraud and misrepresentation in the inception of the contract, and that the signature of defendant to the contract was procured by fraud and misrepresentation. In the circuit court a motion to direct a verdict for plaintiff was overruled and a verdict for defendant was returned, upon which a judgment was entered. It is recited in the record that plaintiff moved for a new trial " for the reason, among others, that the verdict was against the weight of the evidence, which motion the court overruled and gave plaintiff an exception thereto."

The errors assigned relate (a) to rulings admitting testimony, (b) the refusal to direct a verdict for plaintiff, (c) the overruling of the motion for a new trial. It is further assigned as error that the court permitted the jury to determine what the contract of the parties was. The position of defendant, at the trial, was one confessing that the plaintiff ought to recover the amount unpaid on the contract, if the contract was binding on defendant.

The issue submitted to the jury was stated in the charge to the jury as follows:

"The two aspects of the case presented to you are these: Did the plaintiff through its agent, Mr. McGregor, fairly advise the defendant that the contract was for a course of instruction in mechanical drawing, and with that understanding did the defendant attach his signature

to the contract? If so, then, if you find further that the plaintiff has been willing, up to this time, to carry out its duties in the matter, your verdict should be for the plaintiff for the sum in question."

The jury was further instructed:

"Now, assuming what I said with reference to the defendant, when you come to regard the defense which he interposes here, it is necessary, before you accept that defense, to be satisfied by a preponderance of the defendant's proof that there was a misrepresentation to the effect that the course of instruction was to be in mechanical engineering, and that the defendant, relying upon that representation, and because of it, entered into the contract. If so, your verdict should be for the defendant. Now, in viewing this case, you are called upon to scrutinize the testimony of the witnesses for both sides, with a view to endeavoring to find out just what contracts these parties made. It is not for you sitting here to make a contract for them. They had their day of negotiations with each other, and whatever they mutually agreed upon at that time should be binding upon them. So it is your province here, not to make a contract for them, but to endeavor to find out from the testimony of these witnesses just what was the precise agreement which they made, and, having found out that, leave them where they put themselves. You are not to favor one or the other, but to endeavor to find what their negotiations were, and what mutual agreement they finally came to, and then leave them in the very situation, whatever it may be, in which they voluntarily and mutually placed themselves. It is not your concern where they are left, but it is your concern to find out what mutual agreement they actually came to, and to require both of them to live up to it, whatever it was."

The defendant testified, over objections, that the plaintiff's agent solicited him to take, and agreed to give him, a course in mechanical engineering; that he spoke something about mechanical drawing and told him the two went together; that when he signed the contract the agent said it did not amount to anything, only an enrollment.

"He had the contract in his hand, or the paper, what

he called the enrollment. He put it on a stand where I was sitting before, with his name on it. He said, 'Put your name right down there.' He didn't let me see the paper at all. I didn't think it amounted to anything, only for me to take out a course in that school, and I put down my name on it, and he told me afterwards I would not be obliged to go on with it, if I saw I could not go through with it. When he didn't do with me what he agreed to in the first place, and I could not work out what he did tell me, I told him right out I could not do it, and that he had deceived me in giving me something else in place of what he agreed to give me.

"*Q.* How many of those were sent to you (showing three papers) ?

"*A.* Three came in one envelope, if I am not mistaken, all came at once, and that was all the lessons I ever got, and I told him when I got those I could not work them out, and they were not even what I asked him for or what I supposed I was getting.

"*Q.* Did you attempt to work them out ?

"*A.* Yes, sir.

"*Q.* And you could not work them out ?

"*A.* No, I could not do anything with them, and I told him that the first time he came.

"*Q.* You told him when he came your education was such that you could not work out the proposition ?

"*A.* Yes, sir; and he said, you would have to, you have got to now.

"*Q.* Did you refuse to pay him anything further on the contract ?

"*A.* Yes, sir; I refused to pay him anything further on the proposition.

"*Q.* At the time you signed that contract, at that time he told you that the mechanical engineering and mechanical drawing went together ?

"*A.* Yes, sir.

"*Q.* Did he afterwards tell you they didn't ?

"*A.* Not until after I came down here to the office. I came down, looked through the papers, and came down to the school with it, and turned them in. 'Mechanical engineering is $140,' he said. I said, 'You agreed to give me mechanical engineering for something over $60,' and he said, 'Oh! No, no.'

"*Q.* Whom did you have the conversation with at that time ?

"*A.* Mr. McGregor and Mr. Schoolcraft, if I am not mistaken; I think there was another gentleman. I don't remember his name now.

"*Q.* He wanted $140 for that course?

"*A.* Yes, sir.

"*Q.* Did he solicit and say you could go through that in six months?

"*A.* He said, if I could average and put in two hours a day, I could go through it in six months, and an hour a day I could easily enough do it in a year. * * *

"*Q.* When you received this enrollment on the 17th of July, did you then take up the question of mechanical engineering with him?

"*A.* Yes, sir.

"*Q.* Then he told you you were only taking mechanical drawing?

"*A.* Yes, sir.

"*Q.* Then later you went to the office with him?

"*A.* Yes, sir.

"*Q.* Was it there you learned that mechanical engineering cost $140?

"*A.* Yes, sir.

"*Q.* You received those lessons?

"*A.* I think those are the ones; I received three little books, they all came together, and I looked them over some. He said I would receive lessons until the course was completed; he didn't say how many lessons."

He also testified without objection:

"I am an extra conductor on the railroad now, and have been railroading 12 years. I remember the occasion of this gentleman calling on me to solicit me for something in the International School, some course.

"*Q.* Did he call on you frequently?

"*A.* He bothered me two or three times there before; he came there, and I told him I had no education to go ahead in anything like that. He said it didn't require any, he said it wouldn't require any; if I would put in an hour a day, it wouldn't take me over from six months, he said about a year, if I put in an hour a day; if I could study two hours a day, I could get through with it in about a year; and I found out later it took seven years for a good scholar to go through with it."

OSTRANDER, C. J. (*after stating the facts*). We have

had difficulty in applying to the record much that is said in the main brief for appellant, in making which, Rule 40 of this court was not observed. We have read the "Additional Assignment of Error and Brief," signed by foreign counsel but not by local counsel, filed in this court June 5, 1911. It is assumed therein that the effect of the rulings made by the trial court, adverse to plaintiff, was to impair the obligation of a contract, in violation of the Constitution of the United States. No Federal question was suggested at the trial, and no Federal question is considered by this court.

No argument is made in the brief for the appellee to support the rulings admitting testimony, the charge of the court, or the theory according to which the issue of fact was left with the jury. Nevertheless, we must sustain the judgment if no error occurred at the trial. The theory according to which the issue was left to the jury is one which assumes that defendant agreed with plaintiff's agent that he would subscribe for a course of instruction in mechanical engineering, and that if this was so he would not be bound by his written proposal and subscription to take a course of instruction in mechanical drawing. It does not appear that defendant's counsel made objection when the court advised the jury that defendant claimed that it was represented to him that he was to be given a course of instruction in mechanical engineering, and with that understanding he attached his signature to this contract. Some of defendant's testimony supports this statement of his claim. There is to be found in it support also for the contention that he did not suppose the writing was a contract, but supposed that it was a mere enrollment which involved no liability. As the theory that defendant intended to make a written contract or proposal was accepted by the court, approved by defendant, and given to the jury, we accept it in considering the assigned errors the more readily because defendant did not deny the execution of the writing.

It is contended that the effect of the final act of defend-

ant, *i. e.*, the signing of the paper writing containing the proposal and delivering it to plaintiff's agent, must be determined from the writing; therefore all testimony concerning what plaintiff's agent said concerning its legal effect, and that defendant was not obliged to continue the course, was improperly received. The contention is sustained by the general rule. An inspection of the writing shows that it is so drawn as to be a complete memorial of the arrangement of the parties and, after acceptance by plaintiff, a complete contract. It does not fall within the class of writings considered in *Phelps* v. *Whitaker*, 37 Mich. 72; *Weiden* v. *Woodruff*, 38 Mich. 130; *Walter A. Wood Mowing, etc., Machine Co.* v. *Gaertner*, 55 Mich. 453 (21 N. W. 885); *Bird* v. *Pope*, 73 Mich. 483 (41 N. W. 514); *Palmer* v. *Roath*, 86 Mich. 602 (49 N. W. 590); *Richey* v. *Daemicke*, 86 Mich. 647 (49 N. W. 516); *Butler* v. *Iron Cliffs Co.*, 96 Mich. 70 (55 N. W. 670), and many other like cases. And therefore testimony to vary or contradict its terms was inadmissible. Some of these cases and others are considered, commented upon, and distinguished in *Cohen* v. *Jackoboice*, 101 Mich. 409 (59 N. W. 665). See, also, *R. K. Carter & Co.* v. *Weber*, 138 Mich. 576 (101 N. W. 818).

Undoubtedly, parol evidence is admissible to show fraud and deceit at the inception of an instrument, and in this court counsel for appellee argues that plaintiff's agent was guilty of fraud and deceit in inducing defendant, a workingman with a family, to believe that he could complete, or could profitably pursue, a correspondence course in engineering. He points out that a high school graduate must pursue such a course in our universities for four years, and says it is only the credulous who are seduced into subscribing for such a course of study in a correspondence school, with the idea of pursuing it in one or two hours of daily study. Whatever merit this contention may possess, it is not within the theory given to the jury. As the case was tried, the court should have directed a verdict for plaintiff.

It is contended by counsel for appellee that, inasmuch as plaintiff offered no proof of damages sustained by the breach of the contract, a verdict could have been directed in its favor for nominal damages only, and for this reason the judgment should not be reversed. *International Text-Book Co.* v. *Schulte*, 151 Mich. 149 (114 N. W. 1031); *International Text-Book Co.* v. *Jones*, *ante*, 86 (131 N. W. 98). See, also, *Wigent* v. *Marrs*, 130 Mich. 609 (90 N. W. 423). The point was not made in the court below, where, as has been stated, defendant apparently conceded the amount of the verdict if one was returned for plaintiff. We cannot know that plaintiff would not have presented further proofs if the concession had not been made. We therefore reverse the judgment with the right to a new trial. In view of the contentions made in this court in behalf of plaintiff, we think it proper to say that we are unable to distinguish this case and the first two of those above cited upon the facts.

The contract contains the provision that the subscription "when accepted by you shall not be subject to cancellation, and that you shall not be required to refund any part of the money paid for said scholarship," which provision was not contained in the contracts considered in the cases above referred to, and contains also a provision that if default is made in the payment of any installment the whole amount remaining unpaid should thereupon become due and payable at the option of plaintiff. We are nevertheless of opinion that the damages recoverable are those occasioned by the breach of the contract, to be measured by the rule announced in the cases cited. It may be found that they are, substantially, the amount unpaid upon the subscription.

The judgment is reversed, and a new trial granted.

BIRD, MOORE, McALVAY, and BROOKE, JJ., concurred.