WILSON v TAYLOR

Docket No. 105906. Argued December 9, 1997 (Calendar No. 5). Decided
May 6, 1998.

Thomas D. Wilson and William G. Rappleye brought a land contract
forfeiture action in the 12th Judicial District Court against
Robert S. and Tonia M. Taylor land contract vendees. The court,
Lysle G. Hall, J., entered a consent judgment for the plaintiffs for
$2,000. The plaintiffs drafted the judgment on a standard State
Court Administrative Office form, which provided under a para-
graph entitled "Further Orders" that all monies paid during the
redemption period were to be applied first to current payments and
then to the outstanding judgment amount. The defendants were not
represented by counsel. After the redemption period had expired,
the plaintiffs moved for a writ of restitution on the ground that, fol-
lowing the "further orders" language, and applying the bulk of the
monies paid to the amount that had become due under the con-
tract, the defendants remained significantly in arrears. At a hearing
on the motion, the defendants stipulated that the outstanding bal-
ance had not been paid in full and that they would have a period in
which to pay the amount owing or a writ of restitution would be
entered. When the defendants made no further payments, a writ
was issued. The defendants then obtained counsel and moved for
stay of and relief from the judgment, which was denied. The Jack-
son Circuit Court, Chad C. Schmucker, J., affirmed. The Court of
Appeals, GRIFFIN, P.J., and HOOD and E. M. THOMAS, JJ., affirmed in
part and reversed in part in an unpublished opinion per curiam,
finding that the district court had erred in the application of the
"further orders" language and that the language was an improper
clog on the defendants' right of redemption. However, the Court
affirmed the result on the ground that the failure to make the
monthly payments constituted a separate material breach and a
proper ground for the issuance of the writ of restitution (Docket
No. 164978). The defendants appeal.

In an opinion by Justice CAVANAGH, joined by Chief Justice
MALLETT, and Justices BRICKLEY and KELLY, the Supreme Court held:

The writ of restitution was issued improperly.

1. MCL 600.5741; MSA 27A.5741 clearly requires that a judgment is to prescribe the amount to be paid to preclude issuance of a writ of restitution. In this case, the amount stated in the judgment was $2,000. The "further orders" language operated to circumvent this amount and purported to require that an amount in excess of the $2,000 actually would be required to prevent issuance of the writ. This language operated contrary to the statute, and, thus, was erroneously entered.

2. MCL 600.5744(6); MSA 27A.5744(6) prevents issuance of a writ of restitution in a land contract forfeiture proceeding if payment is made in an amount provided in the judgment and other material breaches are cured. Monetary and nonmonetary breaches are clearly divided. A writ of restitution is issued only upon a failure to pay the amount specified in the judgment. To permit its issuance upon a failure to pay some other amount, under the context of a material breach, would be to allow the writ to be issued on the basis of a failure to pay an amount that has never been subject to proof before the court. The Court of Appeals erred in holding otherwise.

Reversed.

Justice TAYLOR, joined by Justice WEAVER, dissenting, stated that issuance of the writ of restitution should be affirmed because defendants failed to pay even the minimum amount due during the period of redemption.

The majority is apparently unwilling to enforce the statutory time limit because *Flynn v Korneffel*, 451 Mich 186 (1996), was not cited by either party. However, an appellee's failure to adequately brief a case does not preclude affirming the result reached below when there was no error. The Supreme Court has a duty to follow the law if it is within its knowledge what the law is.

A consent judgment does not strip the instrument of its contractual character. Moreover, a consent judgment possesses the same force and character as other judgments. In this case, the parties resolved their dispute by contracting for the amount the defendants owed, when it would be paid, and the result that would follow if defendants failed to perform. The parties placed their agreement on the record and obtained a judgment that embodied these terms. They later modified their agreement to give the defendants additional time to pay, and this agreement also was reduced to an order of the court. After the defendants failed to perform as required, a writ of restitution was entered pursuant to the terms of the consent judgment. By holding the "further orders" language of the judgment invalid under § 5741, the majority fails to enforce the contractual agreement the parties reached. However, it was not necessary for

their settlement agreement, even though litigation had been commenced under the summary proceedings act, to track the resolutions that would have been allowable under the act. The act does not make an alternative agreement to resolve the dispute illegal. Rather, it provides that the remedy provided by summary proceedings is in addition to, and not exclusive of, other remedies. Because a settlement short of trial was mutually agreed to, the plaintiffs are entitled to enforcement of the terms of the consent judgment. The fact that the remedy may be different than they would have had had they proceeded to trial is irrelevant.

Justice BOYLE, dissenting, stated that because the defendants failed to pay the balance owed within the statutory period of redemption, the writ of restitution was properly issued.

*Rappleye & Wilkins, P.C.* (by *William G. Rappleye*), for plaintiffs-appellees.

*Stephen D. Conley* for defendants-appellants.

Amici Curiae:

*Jerrold Schrotenboer* for Legal Services Association of Michigan, Legal Services of Southeastern Michigan, Inc., Michigan Legal Services, and United Community Housing Coalition.

*Pepper, Hamilton & Scheetz, L.L.P.* (by *Vicki R. Harding* and *Lisa S. Gretchko*), for Real Property Law Section of the State Bar of Michigan.

CAVANAGH, J. In this case, we are called on to decide whether a defendant against whom a land contract forfeiture judgment has been obtained must pay an amount, representing the monthly payments under the contract, in excess of the judgment to preclude entry of a writ of restitution.[1] For the reasons detailed

---

[1] The land contract summary forfeiture proceedings in question are governed by the Revised Judicature Act, MCL 600.5701 *et seq.*; MSA 27A.5701 *et seq.*

below, we reverse the decision of the Court of
Appeals and conclude that the writ of restitution in
this case was issued improperly.

I

Defendants in this case are husband and wife. They
entered into a land contract for a two-unit residential
property with Lynette Marie Luft in August 1989. In
January 1992, Luft assigned her interest in that con-
tract to the plaintiffs, two attorneys. In April 1992,
plaintiffs commenced a forfeiture action in the 12th
District Court. Plaintiffs voluntarily dismissed that
action, and then filed a second forfeiture notice in
August 1992.[2] It is this action from which the present
appeal arises.

On October 27, 1992, the defendants, who were not
represented by counsel, consented to entry of judg-
ment in favor of the plaintiffs for $2,000. In a brief
hearing,[3] both defendants acknowledged that $2,000
was "due and owing." Ms. Taylor also replied affirma-
tively when the court inquired if she was familiar with
the terms outlined in the judgment. The defendants
agreed with the court that, because less than half the
total contract had been paid, the redemption period
would be ninety days. Finally, plaintiff Rappleye also
agreed with the court that $2,000 was the redemption
amount.

The plaintiffs drafted the judgment on a standard
State Court Administrative Office approved form.

---

[2] Plaintiffs also commenced a third action in July 1993, after the circuit
court ruled in plaintiffs' favor following defendants' appeal from district
court in the present case. That case was dismissed for a lack of progress
in April 1994, and is not involved in this appeal.

[3] The record indicates that the entire hearing took two minutes to
complete.

Included in this judgment, in paragraph 6, "Further Orders," was a provision that "all monies paid during redemption period shall first be applied to keep payments current and then to the outstanding judgment amount." This provision was not specifically mentioned on the record by the parties or the court, nor did the parties sign this judgment in the space provided for approval of content and form.

Between October 27, 1992, and the end of January 1993, the defendants paid the plaintiffs a total of $1,800. On February 5, 1993, after the redemption period had expired, but before any further action in this matter, the defendants paid an additional $350 to the plaintiffs, bringing the total amount paid to $2,150. Nonetheless, the plaintiffs moved for issuance of a writ on the ground that, following the "further orders" language, and applying the bulk of the monies paid to the $1,600 that had become due under the contract,[4] the defendants remained significantly in arrears.[5]

---

[4] The $1,600 figure represented four months of land contract payments of $400 a month.

[5] The math applied by the plaintiffs merits further discussion. The plaintiffs' motion for issuance of the writ of restitution, in paragraph 3, claimed the defendants had paid a total of $1,400, in amounts of $600 on October 27, 1992, $400 on December 15, 1992, and $400 on January 8, 1993. In paragraph 4, the motion claimed that $1,600 had become due under the contract since entry of the judgment.

Plaintiffs' brief on appeal to this Court includes an attachment consisting of canceled checks and money orders received from the defendants. While the three amounts above appear on instruments with dates close to those above, an additional $400 check dated November 5, 1992 is included, along with a $350 check dated February 5, 1993.

While it is apparent that the $350 check was issued after the date the plaintiffs' motion was signed, the absence of any mention of the November 5, 1992, check is troubling. The motion claims that defendants have "failed to pay the monies which were due on the payments which accrued during the redemption period and have paid nothing toward the outstand-

The district court held a hearing on the motion on February 9, 1993. At that hearing, the plaintiffs presented a stipulation, signed by the defendants, that the "outstanding balance which was due and owing has not been paid in full," and agreeing that the defendants would have until February 18, 1993, to pay the $1,450 still owing, or a writ of restitution would be entered at any time thereafter. The stipulation was presented to the court at the hearing on the motion, and the court entered an order in accordance with it. The defendants again were unrepresented by counsel. The transcript of this hearing reveals that the court was aware of the "further orders" language, but at no time does it appear that the court was made aware of the fact that, at the time of the hearing, $2,150 had been paid to the plaintiffs.[6]

The defendants did not make any further payments before February 18, 1993, and, on that day, the plaintiffs applied for and received a writ of restitution ex parte. The application for the writ indicated the "No payment has been made on the judgment and/or no rent has been received since the date of judgment, except the sum of $1,400.00 received under the following conditions: per the judgment."[7]

---

ing balance on the Judgment of Land Contract Forfeiture." Discarding the $350 check as not yet having arrived, the plaintiffs were admittedly in receipt of $1,800 at the time this motion was drafted. The plaintiffs claim $1,600 was due under the "further orders" language. Even if we were to adopt the plaintiffs' reasoning and math, the defendants would have paid the entire amount that had become due as monthly payments, plus $200 toward the judgment amount (and all this before the last $350 payment). The plaintiffs' statements in the motion appear to be irreconcilable with the checks that plaintiffs have presented to this Court and admit they received.

[6] The transcript reveals this hearing took three minutes to complete.

[7] Again, the plaintiffs' math invites inquiry. This application was signed on February 18, 1993, by which time the plaintiffs were in receipt of

While plaintiffs undertook actions to evict the defendants, while simultaneously offering them the option of renting the premises, the defendants, for the first time, obtained counsel to represent them in this matter. Counsel immediately moved for a stay of and relief from the judgment. Following a hearing, the district court denied the motion.

Defendants appealed in the Jackson Circuit Court, which affirmed. In the course of this appeal, an appeal bond and escrow order was entered, requiring the defendants to continue their $400 land contract payments each month. The circuit court continued the appeal bond and escrow order to allow the defendants to proceed in the Court of Appeals. The defendants claim in this Court that they have continued to make every monthly payment since the entry of the escrow order, and the plaintiffs do not dispute that.

The Court of Appeals, in an unpublished per curiam opinion,[8] affirmed in part and reversed in part. Finding the district court to have erred in the application of the "further orders" language, the Court of Appeals held that such language was an "improper 'clog' on

---

$2,150. While plaintiffs attempt to argue that some of these payments were to be applied to monthly payments, and others to the judgment amount, this position is in conflict with their claim that the "further orders" language is controlling and that all payments first must be applied to the monthly amounts accruing. Moreover, even following plaintiffs' arguments as they are included in their brief on appeal does not lead to any situation where the amount received "under the judgment," even if we somehow discount amounts applied to ongoing monthly payments, equals $1,400.

In short, it appears that both the motion and the application for the writ of restitution significantly understate the payments actually received, and the plaintiffs' various competing rationales all fail to support the claims made in the application for the writ.

[8] Issued January 5, 1996 (Docket No. 164978).

defendants' right of redemption."[9] The Court then
affirmed the result, however, on the ground that the
failure to make the monthly payments constituted a
separate material breach and a proper ground for the
issuance of the writ of restitution.

We granted leave to appeal to address this issue,
which may affect a substantial number of land con-
tract vendors and vendees, and invited the Michigan
State Bar Real Property Law Section to file a brief
amicus curiae.[10] We now affirm in part, and reverse in
part.

II

The question before us concerns the appropriate-
ness of the Court of Appeals sanctioning the use of
summary forfeiture proceedings to enforce the pay-
ments due on the underlying land contract that
accrue after a judgment has been entered, but prior
to the issuance of a writ of restitution. The Court of
Appeals held that the failure to make such payments
constituted a material breach under the contract suffi-
cient to support the issuance of a writ of restitution.
We review this question of law de novo. *Cardinal
Mooney High School v Michigan High School Athletic
Ass'n*, 437 Mich 75; 467 NW2d 21 (1991).

A

The concept of forfeiture in the land contract set-
ting has undergone a substantial evolution under

---

[9] This portion of the decision of the Court of Appeals was not appealed
by the plaintiffs, and, hence, is not before this Court.

[10] 454 Mich 921 (1997). The Court has benefited from the amici curiae
briefs filed in this matter. Plaintiffs' "brief" is indeed just that, it contains
one page of counter statement of facts and one sentence of argument with
no citation of authority.

Michigan law. Originally, a common-law forfeiture ended the land contract. The seller was discharged from his duty to convey, and the purchaser was discharged from his duty to pay. See *Stevens v Most*, 251 Mich 23; 231 NW 47 (1930). In *Stevens*, this Court examined a situation similar to the instant case. The defendant in *Stevens* argued that the notice of forfeiture operated to terminate his duty to pay, and hence he should be able to redeem the contract by paying the amount stated in the notice of forfeiture.

This Court rejected that argument, reasoning:

> This method would cause a multiplicity of suits and serve no useful end. We believe that the practice heretofore generally followed of including all amounts due up to the date of the judgment is correct, and carries out the intent and purpose of the present statute. [*Id.* at 27.]

This same concern resonated in the views of the circuit court below. While the argument was abandoned here, the plaintiffs did advocate such a concern below. While we agree that such a concern can, in some circumstances, be very legitimate, we do not find it so here.

In *Gruskin v Fisher*, 405 Mich 51; 273 NW2d 893 (1979), we addressed the area of land contract forfeitures as concerning the issue of election of remedies. We noted that, historically, the effect of the service of a notice of forfeiture was to end the contract, and, thus, was an election of remedies. Under modern summary proceeding practice, however, we found that a notice of forfeiture actually acted more as a condition precedent to the commencement of summary proceedings. In modern practice, including summary proceedings under the Revised Judicature Act,

MCL 600.5701 *et seq.*; MSA 27A.5701 *et seq.*, a seller may pursue alternative remedies until a writ of restitution has been entered, even after a judgment of possession has been entered. *Id.* at 66-67.

We have recently restated the belief that the Revised Judicature Act is a codification of the common-law rule of election of remedies, with some arguable modifications. *Michigan Nat'l Bank, Trustee v Cote,* 451 Mich 180; 546 NW2d 247 (1996). While we do not return to the issues underlying *Gruskin* or *Cote* today, we are confident that the option of instituting a foreclosure action, as opposed to a forfeiture action, existed for the plaintiffs when they filed their initial claim.[11] Indeed, we note that the plaintiffs earlier had filed and then dismissed a forfeiture action, for reasons that are not clear from the record. Whatever their reasons, the possibility of the need to file repeated forfeiture actions appears to have been more than an abstract concept to the plaintiffs. Nonetheless, they chose to forgo the acceleration advantages of a foreclosure action in favor of the ease of a summary forfeiture proceeding.

This leads us to dispose of the problem that so troubled the circuit court and was a basis of arguments for the plaintiff below. A land contract vendor in the plaintiffs' position need never face the diffi-

---

[11] Likewise, under *Gruskin,* it seems that the plaintiffs could have elected to seek foreclosure rather than seek a writ of restitution. What the plaintiffs tried to do is what *Gruskin* spoke of at some length, take advantage of a less sophisticated party. *Id.* at 69, n 13. The plaintiffs sought the speed of forfeiture, but tried to also collect as much of the payments as would become due under the contract in the interim of the redemption period. Nothing in *Gruskin* strikes us as holding permissible the actions taken in this case. It is the next section of our analysis, however, that is dispositive.

culty of being required to institute a multiplicity of suits. Such a vendor has another option: he may commence a foreclosure action. The Court hardly needs to concern itself with protecting the vendor from postjudgment defaults. The vendor has the option of protecting himself by instituting a foreclosure action.[12]

B

We note that while the defendants and amici curiae urge us to address the question of a clogging of the

---

[12] The dissent fears that vendors will find themselves on a "litigation treadmill" (*post* at 255), apparently because foreclosure proceedings are inherently more complex than summary procedure forfeiture remedies, and hence not a realistic alternative. We disagree. The Legislature has granted vendors two alternative remedies, one that is very rapid, but does not allow for a recovery of all payments due under the contract, and one that is more complex, but does allow a full recovery. We simply decline to judicially legislate some provisions from the latter into the former. Despite having previously filed a case against defendants, then dismissing it, plaintiffs still elected a summary forfeiture proceeding. Even so, as we noted in *Gruskin, supra* at 66-67, the option of pursuing a foreclosure remedy remained open to the plaintiffs, even after the entry of a judgment of possession. If, before the entry of the writ, plaintiffs had decided that the four months' worth of payments were more important to them than immediate possession of the property, they had the option to commence a foreclosure proceeding. Rather, they chose to seek a writ of restitution, and, hence, forgo any amount greater than the specifically stated judgment amount.

The dissent's citation of *Gruskin* for the proposition that forfeiture proceedings should not be encouraged arrives without the necessary context. As we noted immediately before that statement, "[land contract] sellers do not seek a return of property, but payment." *Gruskin* at 63. We noted the availability of summary forfeiture proceedings, which "move expeditiously and generally accomplish their purpose of persuading the purchaser to cure the delinquency." *Id.* at 64. "If it appears that the purchaser does not desire or intend to perform and is willing to surrender his equity, then the seller must make a decision and, under the statute, is put to an election of remedies. He may accept possession or, if he wishes to obtain a deficiency judgment, abandon the summary proceedings in favor of foreclosure action." *Id.* Contrary to the dissent's implication, our decision in *Gruskin* hardly amounts to a wholesale disfavoring of foreclosure actions.

equity of redemption, we are in fact not properly presented with that issue. The Court of Appeals ruled in favor of the defendants on this issue, and the plaintiffs filed no appeal or cross-appeal on this issue. Before this Court, the plaintiffs present a one-sentence argument with no citation to authority. On its face it is unclear what issue, if any, that sentence attempts to raise. More importantly, a mere statement without authority is insufficient to bring an issue before this Court. It is not sufficient for a party "simply to announce a position or assert an error and then leave it up to this Court to discover and rationalize the basis for his claims, or unravel and elaborate for him his arguments, and then search for authority either to sustain or reject his position." *Mitcham v Detroit*, 355 Mich 182, 203; 94 NW2d 388 (1959).[13] Accordingly, we need not address this issue, and therefore, decline to do so.[14]

To be thorough, however, and also to provide guidance to the bench and bar, as requested by the amici

---

[13] While Justice VOELKER's statement expresses the point in a most eloquent fashion, this has been the rule in Michigan long before his statement, and long after. See, e.g., *Arrand v Graham*, 297 Mich 559; 298 NW 281 (1941), and *Speaker-Hines & Thomas, Inc v Dep't of Treasury*, 207 Mich App 84, 90-91; 523 NW2d 826 (1994).

[14] The dissent of Justice TAYLOR suggests that we are, in effect, being wilfully blind of the possible effect of *Flynn v Korneffel*, 451 Mich 186; 547 NW2d 249 (1996). We disagree. We are called on only to answer a simple question: Did the Court of Appeals err in determining that the failure to pay the monthly payments was a "material breach" under MCL 600.5744(6); MSA 27A.5744(6). We find the answer to clearly be yes, and note that a close reading of Justice TAYLOR's dissent finds that he does not disagree. The difference, then, is that we are content merely to conclude the task at hand, rather than continue onward toward some particular conclusion, or decide the applicability of a particular case to the facts before us, where that case was not even cited by any of the parties or amici curiae. Accordingly, we should not, and do not, express any opinion regarding the effect of *Flynn* to these circumstances, as we are simply not called on to do so.

curiae, we note that to the extent that plaintiffs raise any question at all regarding the "further orders" language being viable, such language must fail as being contrary to the statute. MCL 600.5741; MSA 27A.5741 states:

> If the jury or the judge finds that the plaintiff is entitled to possession of the premises, or any part thereof, judgment may be entered in accordance with the finding and may be enforced by a writ of restitution as provided in this chapter. If it is found that the plaintiff is entitled to possession of the premises, in consequence of the nonpayment of any money due under a tenancy, or the nonpayment of moneys required to be paid under an executory contract for purchase of the premises, the jury or judge making the finding shall determine the amount due or in arrears at the time of trial which amount shall be stated in the judgment for possession. In determining the amount due under a tenancy the jury or judge shall deduct any portion of the rent which the jury or judge finds to be excused by the plaintiff's breach of the lease or by his breach of 1 or more statutory covenants imposed by section 39 of chapter 66 of the Revised Statutes of 1846, as added, being section 554.139 of the Compiled Laws of 1948. *The statement in the judgment for possession shall be only for the purpose of prescribing the amount which, together with taxed costs, shall be paid to preclude issuance of the writ of restitution.* The judgment may include an award of costs, enforceable in the same manner as other civil judgments for money in the same court. [Emphasis added.]

The statute clearly requires that the amount stated shall prescribe the amount to be paid to preclude issuance of the writ. Here the amount stated in the judgment was $2,000. The "further orders" language operated to circumvent this amount and purported to require that an amount in excess of the $2,000 stated actually would be required to prevent issuance of the

writ. We find this language operated contrary to the statute, and, thus, was erroneously entered.

C

We now address the holding of the Court of Appeals that the failure to make monthly payments during the redemption period was a material breach sufficient to justify issuance of the writ of restitution. In so finding, the Court of Appeals relied on MCL 600.5744(6); MSA 27A.5744(6), which states:

> When the judgment for possession is for nonpayment of money due under a tenancy or for nonpayment of moneys required to be paid under or any other material breach of an executory contract for purchase of the premises, the writ of restitution shall not issue if, within the time provided, the amount as stated in the judgment, together with the taxed costs, is paid to the plaintiff and other material breaches of an executory contract for purchase of the premises are cured.

While we agree that this subsection applies to this question, we find that the Court of Appeals erred in interpreting it. The statute quoted prevents the issuance of a writ of restitution if payment is made in an amount provided in the judgment and other material breaches are cured. The statute separates "nonpayment of moneys required to be paid," from "any other material breach." It clearly divides monetary and nonmonetary breaches. It seems clear that whatever the other material breaches may be, they do not include the failure to make monetary payments.

To hold otherwise would run contrary to the specific language of the statute and logic. A writ of restitution is issued only upon a failure to pay the amount specified in the judgment. To permit its issuance upon

a failure to pay some other amount, under the context of a "material breach," would be to allow the writ to be issued on the basis of a failure to pay an amount that has never been subject to proof before the court.

As we have already noted, MCL 600.5741; MSA 27A.5741 requires only that the amount of the judgment need be paid to preclude the issuance of the writ of restitution.[15] While some other nonmonetary material breach, which was specified in the judgment for possession, might need to be cured to preclude the issuance of a writ of restitution, we hold that the amount specified in the judgment is the only monetary payment that needs to be made to preclude the issuance of a writ of restitution in a land contract forfeiture proceeding under the Revised Judicature Act. The Court of Appeals erred in holding otherwise.[16]

III

As we have noted, the Court of Appeals found that the reason relied on by the trial court for the issuance of the writ, the failure of the defendants to comply with the "further orders" language, was erroneous. We are not called on to review that decision. The sole

---

[15] As well it should. Were we to adopt the dissent's view, we would be condoning the use of a writ of restitution to hold a party liable for amounts never subject to proof before the trial court. The mere fact that defendants offered no defenses to the payments due before the entry of judgment does not preclude the possibility that legitimate defenses might exist to some all the payments otherwise due after the entry of judgment.

It seems clear that the court should not be authorizing the entry of a writ on the basis of the owing of an amount that has never been (1) accurately ascertained, or (2) even been proven to be owed before the court.

[16] We again note that none of the parties have raised the issue what effect, if any, the defendants' payment of the last $350 after the period of redemption should have on this case. Accordingly, we are not called on to address this matter and decline to do so.

remaining basis supporting the writ's issuance, the holding of the Court of Appeals that the writ was properly issued on the basis of a material breach was error and is reversed. The writ of restitution is, therefore, quashed.[17]

MALLETT, C.J., and BRICKLEY and KELLY, JJ., concurred with CAVANAGH, J.

TAYLOR, J. (*dissenting*).

I

Defendants were the vendees in a land contract agreement entered into with Lynette Luft. Luft subsequently assigned her interest in the property to plaintiffs. Defendants did not make timely payments on the land contract and, consequently, in October, 1992, after serving notice of forfeiture on defendants with no payment received thereafter, plaintiffs initiated a forfeiture proceeding by filing a complaint for possession. Subsequently, the parties agreed that the land contract was $2,000 in arrears, and on October 27, 1992, the parties appeared in district court and stipulated to the entry of a judgment. The judgment required that defendants pay the $2,000 arrearage and that "all monies paid during [the] redemption period shall first be applied to keep payments current and

---

[17] To the extent the dissent seems to find our decision to call into question all manner of contracts, we simply do not do so. This case is decidedly unusual, and the factual situation herein is likely not to be repeated often. Which is not to say, of course, that land contract forfeiture cases are uncommon. We today simply restate our *Gruskin* explanation of the differences between summary forfeiture and foreclosure proceedings, and the availability of each. Individual vendors must select their remedies on the basis of their situations.

then to the outstanding judgment amount."[1] The judgment indicated that the redemption period closed on February 1, 1993, thus giving defendants just over ninety days to redeem. Thus, to comply with the judgment, defendants should have paid $3,600 by February 1, 1993 ($2,000, plus four payments of $400 a month).

Defendants subsequently paid plaintiffs $2,150. They paid $1,800 during the redemption period specified in the consent judgment ($600 on October 19, 1992, and $400 on November 5, 1992, December 14, 1992, and January 8, 1993). Three hundred-fifty dollars were paid on February 5, 1993, after the deadline had expired. Because the judgment had not been satisfied, plaintiffs moved for a writ of restitution. A hearing was conducted on February 9, 1993. The parties submitted a stipulated order requiring that defendants pay $1,450 by February 18, 1993. This amount represented the unpaid balance due under the October 27, 1992, judgment. Effectively, plaintiffs gave defendants additional time to cure the default. Defendants acknowledged on the record that they had agreed to pay the $1,450 or be put out of the

---

[1] The transcript of the October 27, 1992 hearing shows that defendants told the court that they were aware of the terms of the judgment and that they wished the court to enter it:

*The Court*: You're familiar with the terms outlined in this land contract forfeiture judgment, are you, ma'am?

*Tonia Taylor*: Yes.

*The Court*: And you're willing for the Court to sign it?

*Tonia Taylor*: Yes.

*Robert Taylor*: Yes.

property.[2] The court entered the order and, after no additional payments were made, plaintiffs moved for a writ of restitution, which was entered on February 18, 1993.

Defendants, up to this time unrepresented by legal counsel, retained an attorney and sought to have the writ of restitution set aside on the basis that the original judgment was unenforceable. Defendants claimed that the consent judgment contained an impermissible clog on their right of redemption because it required that all payments made during the redemption period would first be applied to the current month's rent. The district court refused to set the writ

---

[2] The transcript of the February 9, 1993, hearing shows defendants' agreement to the terms of the order entered pursuant to the stipulation of the parties.

*The Court:*   Tonia Taylor. So you've heard what Mr. Wilson has had to say, and you've also reviewed this document called the stipulation?

*Mr. Taylor:* Right.

*The Court:* That's another word for an agreement and an order. It looks like you both signed that. Did you do that here this morning?

*Mr. Taylor:* Yes, ma'am.

*The Court:* All right, so do you understand what the agreement is that you've reached here today?

*Mrs. Taylor:* Yes.

\*     \*     \*

*The Court:* . . . And if you have that paid by that time then this matter would be closed and at an end. However, if you fail to do that, Mr. Wilson will appear here then for Writ of Restitution, which means you would be put out of the property. Do you understand all of that?

*Mr. Taylor:* Yes, ma'am.

*The Court:* And that's the agreement that you've reached? And you understand then having reached that agreement that I'm going to sign this order here today?

*Mr. Taylor:* Yes.

aside, finding that there was no waiver of the right of redemption, and that the judgment merely effectuated the agreement of the parties. The circuit court affirmed. The Court of Appeals also affirmed. In doing so, however, the Court of Appeals first ruled that the provision in the judgment requiring that the contract be kept current during the redemption period was an improper "clogging" of defendant's right of redemption. Nevertheless, the Court concluded that the writ of restitution was proper because defendants' failure to pay the payments as they accrued was a material breach of the land contract that warranted issuing a writ of restitution pursuant to MCL 600.5744(6); MSA 27A.5744(6). This Court granted defendants' application for leave to appeal.

II

I would affirm the result reached by the Court of Appeals, albeit for a different reason than relied on by that Court. If, as the majority clarifies for the benefit of the bench and bar, the judgment must be construed pursuant to MCL 600.5741; MSA 27A.5741 as only requiring that defendants pay $2,000 to redeem, that amount was not paid during the period of redemption. Assuming this dispute is controlled by the summary proceedings act, pursuant to MCL 600.5744(3)[3] and (6)[4]; MSA 27A.5744(3) and (6), defendants had ninety days, and no more, to pay the

---

[3] The applicable portion of the statute states: "[T]he writ of restitution shall not be issued until the expiration of 90 days after the entry of judgment for possession if less than 50% of the purchase price has been paid . . . ."

[4] "[T]he writ of restitution shall not issue if, within the time provided, the amount as stated in the judgment, together with the taxed costs, is paid to the plaintiff . . . ."

redemption amount and thus preclude issuance of the writ of restitution. *Flynn v Korneffel*, 451 Mich 186, 199; 547 NW2d 249 (1996) ("In order to comply with the statute and exercise this right of redemption, . . . it is incumbent on the vendee in default to pay the entire balance *within that period*" [emphasis in original]). In fact only $1,800 was paid before the period of redemption expired. Consequently, defendants simply failed to redeem when they had that right and, therefore, entry of the writ of restitution was proper. That in itself should end this matter.

The majority is apparently unwilling to enforce the statutory time limit because *Flynn* was not cited by either party. I agree that this Court is not obliged to research an appellant's legal arguments when the appellant fails to do so. Yet, there is a critical difference between the appellant's obligation to demonstrate that error occurred below and the role of an appellee. While an appellant bears the burden of directing this Court to the authority that will substantiate its claim of error, appellees are not similarly required to demonstrate the lack of error below. This Court has specifically noted that an appellee's failure to adequately brief a case does not preclude affirming the result reached below when there was no error.

> No argument is made in the brief for the appellee to support the rulings admitting testimony, the charge of the court, or the theory according to which the issue of fact was left with the jury. Nevertheless, we must sustain the judgment if no error occurred at trial. [*Int'l Text-Book Co v Marvin*, 166 Mich 660, 666; 132 NW 437 (1911).]

Moreover, this Court has specifically stated that the failure to raise an issue, both below and in the briefs

to this Court, does not preclude addressing it. *Para-mount Corp v Miskinis*, 418 Mich 708, 730-731; 344 NW2d 788 (1984). The reason for this is that we have a duty to follow the law if it is within our knowledge what the law is, simply to maintain the integrity of our jurisprudence. I find it difficult to imagine that a majority of this Court would, in a given case, throw into jeopardy unchallenged precedent, knowing we are doing so, merely because a party did not cite authorities correctly. Yet this is what we are doing here.[5]

In this case the majority simply refuses to apply the statutory time limit and controlling precedent, well within the Court's knowledge, because the parties' briefs were inadequate in this regard. Such action is contrary to the fact that the Court is obliged to follow the law. I would affirm issuance of the writ of restitution because defendants failed to pay even the minimum amount due during the period of redemption.

III

I further disagree with the majority's conclusion that the "further orders"[6] language of the judgment was improper in this case. This case presents us with the common situation where a lawsuit is resolved by

---

[5] It is even dubious to me that this rule will in fact be applied consistently. The following hypothetical situation makes the point. If a person appeared before this Court after winning on a procedural basis below, asking that he be released from involuntary servitude, yet failed to cite the Thirteenth Amendment of the United States Constitution, prohibiting slavery, would we decline to affirm the lower courts because of that failure? I think not. I grant that I offer an extreme example, yet, its lesson is clear.

[6] To be clear, this label refers to the term in the judgment specifying that any payments made by defendants would first be applied to current accruing payments, with any excess applied to reduce the amount in arrears.

agreement of the parties and then memorialized by entry of a consent judgment. That it is a consent judgment does not strip the instrument of its contractual character. Moreover, a consent judgment possesses the same force and character as other judgments. *Madison v Detroit*, 182 Mich App 696, 701; 452 NW2d 883 (1990). Here, as the litigation sub judice took its course, the parties resolved their dispute by contracting for the amount defendants owed, when it would be paid, and the result that would follow if defendants failed to perform. The parties placed their agreement on the record and obtained a judgment that embodied these terms. After their initial agreement, the parties again went to court and modified their agreement by a second agreement giving defendants additional time to pay the amount still owing under the original consent judgment. This second agreement was also reduced to an order of the court.[7] After defendants failed to perform as required, a writ of restitution was entered pursuant to the terms of the consent judgment.[8]

---

[7] While it may be arguable that the first settlement agreement was not enforceable pursuant to MCR 2.507(H) because defendants apparently did not sign the judgment and all its terms were not placed on the record, defendants did sign the stipulation that led to the entry of this second order. Consequently, because defendants signed this stipulation, which effectively embodied the terms of the first consent judgment, the terms of the agreement are enforceable pursuant to MCR 2.507(H).

[8] It seems odd that the majority finds fault with enforcing the consent judgment on the basis that the amounts defendants agreed were owed under the land contract were "never subject to proof before the trial court." *Ante* at 246, n 15. This is not merely a case in which the defendant failed to offer any defense regarding an amount alleged due by the plaintiff, as suggested by the majority. Rather, by their stipulation, defendants specifically agreed to the amounts past due and accruing after entry of the judgment under the land contract. See n 2. Where defendants affirmatively agreed to these amounts, it is not necessary that plaintiffs prove these amounts in court.

By opining that the "further orders" language of the judgment is invalid under § 5741, the majority fails to enforce the contractual agreement the parties reached to settle this case without going to trial. We should acknowledge that, while this action commenced as a forfeiture proceeding under the summary proceedings act, the parties voluntarily resolved the dispute. It was not necessary for their settlement agreement, even though litigation had been commenced under the summary proceedings act, to track the resolutions that would have been allowable under the act because that act does not make an alternative agreement to resolve the dispute illegal. In fact, quite to the contrary, the act specifically states that "[t]he remedy provided by summary proceedings is in addition to, and not exclusive of, other remedies, either legal, equitable or statutory." MCL 600.5750; MSA 27A.5750; see also *Day v Lacchia*, 175 Mich App 363, 374; 437 NW2d 400 (1989) (a land contract vendor need not resort to statutory summary proceedings in all cases). It is my belief that the act would be utilized through to a judgment only if another means of concluding the case (such as a settlement agreement) was not effected at some point before the entry of the judgment pursuant to the act.[9] This is simply to say, if the parties could not agree, once in litigation, to a resolution of the dispute they have over the land contract, then the summary proceeding act would be the means by which a court-ordered resolution would be

[9] In this regard, I disagree with the majority's implication that a land contract vendor has only two remedies available, i.e., forfeiture or foreclosure. While both have their place, their existence should not preclude the parties from reaching an enforceable agreement outside the confines of these procedures if the parties are able to resolve their dispute more expediently.

effectuated. A settlement short of trial having been mutually agreed to, however, plaintiffs are entitled to enforcement of the terms of the consent judgment. The fact that the remedy may be different than they would have had, had they proceeded to trial, is irrelevant.

IV

Apart from the fact that the judgment was an enforceable contract between the parties that entitled plaintiffs to the writ of restitution, there is yet another problem with the majority's analysis. It holds that any judgment for possession arising out of a land contract dispute may not require the vendee to bring the contract completely current by the end of the redemption period provided in the judgment. This, of course, means that, at the end of the redemption period, if these monthly accruing payments are not made, the contract will again be in arrears and the vendors, once again, would need to initiate proceedings to receive the money they are due. This, as seems obvious, can be a never-ending litigation treadmill. Arguably, this outcome is required if proceeding to judgment under the statute.

However, we should not have to reach this issue because this judgment was not taken under the statute. Rather it was, as I have earlier explained, an enforceable agreement that stands independent of the summary proceedings statute. Given this situation, the parties should be able, if they settle their case before trial under the statute, to make such arrangements as they would wish with regard to accruing payments. The majority precludes the parties from having this latitude, however, by their handling of this

issue. Moreover the majority disavows any concern over this problem by confidently assuring us that we need not fret over the vendor's plight because he can simply choose to commence a foreclosure action. Yet, this argument ignores the common realities faced by land contract vendors.

Typically the vendor has his own payments to make on the property. To tell him to wait months or years as he goes through pretrial mediation, discovery, settlement conferences, and trial in a foreclosure action is to commit him to a desperate situation where he is really without a meaningful remedy. In *Gruskin v Fisher*, 405 Mich 51, 64; 273 NW2d 893 (1979), this Court noted that, at that time, it could take up to five years for a foreclosure action to proceed to trial in Wayne County.

> Land contract purchasers generally do not willingly surrender possession or forfeit their equity. Most sellers do not seek a return of the property, but payment.
> There is no reason to burden the circuit courts with actions to foreclose land contracts. Land contract sellers should not be encouraged to commence such proceedings. [*Id.* at 63.]

It is in this light that we should view the current controversy. If we emasculate a vendor's ability to negotiate resolution of a land contract dispute with his vendee and get the land contract vendee to bring his payments completely current, the result will not be, once the dawn breaks with respect to what we have done, that land contract disputes will simply be handled in foreclosure actions. The outcome will be that we will greatly discourage vendors from offering land contracts. This will be of little moment for financially substantial citizens and institutions that may

well prefer mortgages, but it will be devastating to underfinanced buyers who need land contracts so as to be able to purchase homes. I feel the majority has not considered this in its discussion of this issue.

Consequently, I would affirm the result reached by the Court of Appeals.

WEAVER, J., concurred with TAYLOR, J.

BOYLE, J. (*dissenting*). I join with the dissent for the reason that the balance owed was not paid during the period of redemption. In *Flynn v Korneffel*, 451 Mich 186, 199; 547 NW2d 249 (1996), this Court stated that it was "incumbent on the vendee in default to pay the entire balance *within* [*the period of redemption*]." Because the defendants failed to pay that amount within the statutory period of redemption, the writ of restitution was properly issued.[1]

---

[1] Contrary to the majority's assertion, the issue in this case is not limited to whether the Court of Appeals erred in determining that the failure to pay the monthly payments was a "material breach" under MCL 600.5744(6); MSA 27A.5744(6), *ante* at 243, n 14, but instead involves the broader question whether it was error for the Court of Appeals to affirm the issuance of the writ of restitution at all. That the parties did not cite *Flynn, supra,* by name, when they stipulated to the fact that the full amount of payment was not paid during the statutory period of redemption, does not mean that we are precluded from relying on *Flynn* to resolve this case. Because the defendants failed to pay even the lesser amount of $2,000 before expiration of the statutory period of redemption, it is not necessary to reach the question that both the majority and dissent reach, namely, whether the defendants in fact should have paid $3,600 or only the lesser amount of $2,000 within the redemption period.