# STATE OF MICHIGAN

# COURT OF APPEALS

RAFAELI, LLC, and ANDRE OHANESSIAN,

Plaintiffs-Appellants,

v

OAKLAND COUNTY and ANDREW MEISNER,

Defendants-Appellees.

UNPUBLISHED
October 24, 2017

No. 330696
Oakland Circuit Court
LC No. 2015-147429-CZ

Before: MARKEY, P.J., and METER and SHAPIRO, JJ.

PER CURIAM.

Plaintiffs, Rafaeli, LLC, and Andre Ohanessian, appeal as of right an order granting summary disposition to defendants, Oakland County and its treasurer Andrew Meisner, in this case involving the General Property Tax Act, MCL 211.1 *et seq*.[1] We affirm.

Each plaintiff owned property on which defendants foreclosed because of tax delinquencies. Plaintiffs' lawsuit, styled as a putative class action, alleged various constitutional violations. The trial court found no such violations and ruled, in connection with a motion for summary disposition, that plaintiffs had forfeited their properties.

On appeal, plaintiffs first argue that the GPTA is unconstitutional on its face because it violates due process guarantees by prescribing insufficient steps for a governmental entity to take when it knows or has reason to know that its efforts to provide notice of tax delinquency to a taxpayer have failed.

This Court reviews de novo a trial court's decision regarding a motion for summary disposition. *Ardt v Titan Ins Co*, 233 Mich App 685, 688; 593 NW2d 215 (1999). We likewise review de novo issues of statutory or constitutional interpretation. *Janer v Barnes*, 288 Mich App 735, 737; 795 NW2d 183 (2010).

The Michigan Supreme Court, recognizing the applicability of *Jones v Flowers*, 547 US 220, 225; 126 S Ct 1708; 164 L Ed 2d 415 (2006),[2] ruled in *Sidun v Wayne Co Treasurer*, 481

---

[1] Pacific Legal Foundation filed an amicus curiae brief in support of plaintiffs.

Mich 503, 505; 751 NW2d 453 (2008), that, where notices of tax delinquencies were returned to a county treasurer as undeliverable, the county was not entitled to proceed with foreclosure without undertaking "reasonable follow-up methods . . . ." The Court noted that "[r]easonable follow-up measures directed at the possibility that the addressee had moved would be to post notice on the front door or to send notice addressed to 'occupant.' " *Id*. at 512. The Court also pointed out that, "although the government must take reasonable additional steps to notify the owner, it is not required to go so far as to search for an owner's new address in the phonebook and other government records such as income tax rolls." *Id*. (quotation marks, indications of alterations, and citation omitted).

Plaintiffs argue that the GPTA falls short of the requirements of *Jones* and *Sidun* that foreclosing governmental units take additional steps when knowing that attempts to serve notice have failed and that, therefore, the GPTA is unconstitutional on its face. However, a statutory provision is not unconstitutional on its face unless there is no set of circumstances under which it could be applied constitutionally. *Bonner v City of Brighton*, 495 Mich 209, 223 n 26; 848 NW2d 380 (2014); see also *Judicial Attorneys Ass'n v Michigan*, 459 Mich 291, 303; 586 NW2d 894 (1998). The GPTA does not authorize proceeding to foreclosure where notice consists of a single attempt at mailing known to have failed, but rather, it specifies alternative means of identifying a valid address, mandates personal visits to the subject property, and sets forth requirements for notice by publication. See MCL 211.78i. It is reasonable to presume that following the notice requirements of the GPTA usually results in providing the affected taxpayer with actual notice of foreclosure proceedings. We reject plaintiffs' claim of facial unconstitutionality.

Plaintiffs next argue that the GPTA, *as applied to each plaintiff*, resulted in a deprivation of constitutional due process in connection with notice.

We do not agree. We note, initially, that under MCL 211.78i(10), "The failure of the foreclosing governmental unit to comply with any provision of this section shall not invalidate any proceeding under this act if the owner of a property interest or a person to whom a tax deed was issued is accorded the minimum due process required under the state constitution of 1963 and the constitution of the United States."

Plaintiffs' emphasis on *Jones* and *Sidun* notwithstanding, defendants did not simply rely on a mailing to an address they learned was ineffective. Rafaeli paid taxes in August 2012 and January 2013 in response to notices of deficiencies sent to its address as indicated on the subject property's deed, but a third such notice prompted no such response; apparently defendants had no reason to doubt that that address ceased to be effective but for that lack of a response. Additional steps then included a personal visit to the property, where notice was left with a tenant, plus the identification of a resident agent, and notice sent to Rafaeli at the agent's address. Plaintiffs identify no major misstep on defendants' part when they complain that notice

---

[2] The Court in *Jones* stated, "We hold that when mailed notice of a tax sale is returned unclaimed, the State must take additional reasonable stops to attempt to provide notice to the property owner before selling his property, if it is practicable to do so." *Jones*, 547 US at 225.

sent to the corporation's identified resident agent's address was addressed to the corporation instead of the agent. Further, plaintiffs specify no additional step defendants might have taken that would have better provided Rafaeli with notice. The efforts defendants undertook to serve notice on Rafaeli satisfied the minimal requirements of due process, insofar as the notice was intended to advise the corporation of its tax liabilities and that its property would be subject to foreclosure proceedings to satisfy those liabilities.

Concerning Ohanessian, he paid taxes on his property for years before moving to California in 2011. Defendants sent notices of tax delinquencies to Ohanessian's former Michigan address in June 2013, December 2013, and February 2014. Defendants filed with their motion for summary disposition an affidavit from their chief of tax administration, who attested that notices were sent to both of the addresses on file for Ohanessian, respectively in Livonia and Eastpointe, but that the treasurer's office had no record of any California address for that taxpayer. The affidavit further reported that "the Treasurer published three notices of the properties subject to foreclosure in the 2013 foreclosure case: December 27, 2013, January 3, 2014 and January 10, 2014."

The validity of the foreclosure depended not on perfect compliance with the GPTA, but on satisfying minimal constitutional due process requirements. MCL 211.78i(10). By pointing out that defendants' agent failed to arrange for return receipt in connection with notice sent by certified mail, plaintiffs essentially admit that defendants had no reason, but for the lack of a response, to doubt that the attempted mail service was successful. Further, plaintiffs offer no basis for doubting defendants' chief of tax administration's account of having published notice on three occasions. Here again, defendants did not simply rely on a mailing they knew was unsuccessful.

Regardless, to the extent that the United States Supreme Court's admonishment that "when mailed notice of a tax sale is returned unclaimed, the State must take additional reasonable steps to attempt to provide notice" is applicable, so is the qualification that such additional steps are required only "*if it is practicable to do so.*" *Jones*, 547 US at 225 (emphasis added). And, as was the case with regard to plaintiff Rafaeli, plaintiffs specify no additional reasonable step defendants might have taken that would have better provided Ohanessian with notice.[3] For these reasons, we conclude that the efforts defendants undertook to serve notice on Ohanessian satisfied the minimal requirements of due process, insofar as the notice was intended to advise him of his tax liabilities and that his property would be subject to foreclosure proceedings to satisfy those liabilities.[4]

---

[3] Although plaintiffs complain of a lack of evidence of a personal visit to Ohanessian's property, they do not address whether it would have been practicable to do so, and stop short of stating that such a visit would have satisfactorily supplemented the unsuccessful mailings for purposes of due process.

[4] Plaintiffs complain that discovery had not been completed at the time of the grant of summary disposition, yet also state that "the parties had stipulated to withholding discovery." At any rate, there was no fair likelihood that further discovery would have yielded any information allowing

Plaintiffs next argue that defendants' administration of the GPTA's show-cause hearing requirement, see MCL 211.78j, "allows them to play judge, jury, and executioner without any of the procedural safeguards required by the Due Process Clause." Plaintiffs contend that the show-cause hearings deprive a delinquent taxpayer of a meaningful opportunity to be heard because of the way defendants conduct the hearings.

We agree with defendants that plaintiffs do not have standing to raise this issue. In Michigan, a party has standing if it has a legal cause of action, if the party is seeking declaratory relief and satisfies the requirements of the pertinent court rule, or "if the litigant has a special injury or right, or substantial interest, that will be detrimentally affected in a manner different from the citizenry at large or if the statutory scheme implies that the Legislature intended to confer standing on the litigant." *Lansing Sch Ed Ass'n v Lansing Bd of Ed*, 487 Mich 349, 372; 792 NW2d 686 (2010).

Plaintiffs did not participate in any show-cause hearings below, and so suffered no injury from the manner in which such hearings are conducted. Although they put forward the attendant lost opportunity to "show cause why absolute title to that property should not vest in the foreclosing governmental unit" as required by MCL 211.78j(2) as one of the consequences of their allegedly not having received adequate notice, for purposes of this issue they object in general terms to how defendants purportedly conduct show-cause hearings. Further, plaintiffs explain neither how they came to understand how defendants normally conduct such business, nor why they are so certain that, had they appeared for their show-cause hearings, defendants would have prevented them from exercising their statutory right to show cause in fact.

Plaintiffs insist that they are entitled to declaratory relief in this regard. According to MCR 2.605(A)(1), "In a case of actual controversy within its jurisdiction, a Michigan court of record may declare the rights and other legal relations of an interested party seeking a declaratory judgment, whether or not other relief is or could be sought or granted." A court is thus authorized to entertain an action for declaratory judgment where "necessary to guide a plaintiff's future conduct in order to preserve the plaintiff's legal rights." *Citizens for Common Sense in Gov't v Attorney General*, 243 Mich App 43, 55; 620 NW2d 546 (2000). However, because plaintiffs did not participate in the show-cause hearing offered by defendants, their objections are based on a hypothetical scenario. See *id*.

In addition, plaintiffs' having missed their opportunity to participate in a show-cause hearing in connection with their respective parcels rendered moot any questions concerning how well such a hearing would have comported with the statute requiring them. "A case is moot when it presents only abstract questions of law that do not rest upon existing facts or rights." *B P 7 v Bureau of State Lottery*, 231 Mich App 356, 359; 586 NW2d 117 (1998). "As a general rule, an appellate court will not decide moot issues." *Id*.

---

for recovery by plaintiffs. *Liparoto Construction, Inc v Gen Shale Brick, Inc*, 284 Mich App 25, 33; 772 NW2d 801 (2009).

Because plaintiffs suffered no injury relating to how defendants conduct show-cause hearings, and can only speculate concerning what might have transpired had they appeared for one and demanded their attendant statutory rights, and because their having missed that opportunity in connection with their respective property interests rendered the issue moot, we affirm the circuit court's decision not to grant relief with regard to this issue.

Plaintiffs next argue that the GPTA is unconstitutional because it mandates that governmental entities retain proceeds beyond those required to satisfy delinquent tax bills; they argue that the GPTA therefore allows unconstitutional takings. We disagree. This issue is easily resolved by reference to *Bennis v Michigan*, 516 US 442, 452; 116 S Ct 994; 134 L Ed 2d 68 (1996), a United States Supreme Court case that post-dates other United States Supreme Court cases cited by plaintiffs. In *Bennis*, *id*. at 443, the Court set forth the following summary: "Petitioner was a joint owner, with her husband, of an automobile in which her husband engaged in sexual activity with a prostitute. A Michigan court ordered the automobile forfeited as a public nuisance, with no offset for her interest, notwithstanding her lack of knowledge of her husband's activity. We hold that the Michigan court order did not offend the Due Process Clause of the Fourteenth Amendment or the Takings Clause of the Fifth Amendment." With regard to the takings argument, the Court stated:

> Petitioner also claims that the forfeiture in this case was a taking of private property for public use in violation of the Takings Clause of the Fifth Amendment, made applicable to the States by the Fourteenth Amendment. But if the forfeiture proceeding here in question did not violate the [due process requirement of the] Fourteenth Amendment, the property in the automobile was transferred by virtue of that proceeding from petitioner to the State. The government may not be required to compensate an owner for property which it has already lawfully acquired under the exercise of governmental authority other than the power of eminent domain. [*Id*. at 452.]

Defendants obtained the property by way of a statutory scheme that did not violate due process. The constitution does not require them to compensate plaintiffs for the lawfully-obtained property. *Id*.[5] Plaintiffs' taking argument is without merit.[6] The trial court did not err in granting defendants summary disposition and in denying plaintiffs' motion for reconsideration.

---

[5] Plaintiffs attempt to distinguish *Bennis* by stating that it involved an "overt, intentional act of the [d]efendant in taking part in the crime of pandering." First, the petitioner in *Bennis* was the wife of the person who was "pandering" and took part in no "overt, intentional act" herself. See *Bennis*, 516 US at 443. Second, plaintiffs here also "acted" contrary to the welfare of the state by failing to pay their taxes.

[6] Plaintiffs failed adequately to address an ostensible additional issue, involving the Eight Amendment of the United States Constitution, set forth in their primary brief and thus have abandoned this issue. See *Wilson v Taylor*, 457 Mich 232, 243; 577 NW2d 100 (1998) (discussing inadequate briefing). Plaintiffs mention the issue briefly in footnotes and then, in discussing their takings issue, plaintiffs undercut their ostensible Eight Amendment claim by

Affirmed.

/s/ Jane E. Markey
/s/ Patrick M. Meter

---

stating: "Neither the [c]ourt nor the [t]reasurer has characterized the GPTA's forfeiture scheme as punishment for a crime. If they had, the law's application to [p]laintiffs and thousands of others would raise other constitutional issues, like the Eight Amendment's ban on excessive fines." We reject plaintiffs' attempt to revive the issue by way of their reply brief. Plaintiffs have also abandoned their ostensible issue regarding substantive due process by mentioning it only in passing. *Id*. Plaintiffs have also failed adequately to brief an issue relating to unjust enrichment. They complain that the lower court failed to provide a detailed explanation for its ruling on this issue but then provide insufficient details themselves, setting forth no rules and offering no analysis regarding the extent to which the GPTA did or did not displace the common law with regard to unjust-enrichment claims.