*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* L. HERRON, Minor.

UNPUBLISHED
December 10, 2019

Nos. 347315; 347316
Ingham Circuit Court
Family Division
LC No. 15-001249-NA

Before: SWARTZLE, P.J., and MARKEY and REDFORD, JJ.

PER CURIAM.

In these consolidated appeals, respondent-mother and respondent-father each appeal as of right the trial court's order terminating their parental rights to their minor child under MCL 712A.19b(3)(c)(*i*), (g), and (j). Both respondents argue that the trial court erred by finding the existence of a statutory ground for termination, and both argue that the trial court erroneously found that termination of their parental rights was in the child's best interests. We affirm.

## I. STANDARD OF REVIEW

"In order to terminate parental rights, the trial court must find by clear and convincing evidence that at least one of the statutory grounds for termination in MCL 712A.19b(3) has been met." *In re VanDalen*, 293 Mich App 120, 139; 809 NW2d 412 (2011). "If the court finds that there are grounds for termination of parental rights and that termination of parental rights is in the child's best interests, the court shall order termination of parental rights and order that additional efforts for reunification of the child with the parent not be made." MCL 712A.19b(5).

This Court reviews for clear error the trial court's ruling that a statutory ground for termination has been established and its ruling that termination is in the child's best interests. *In re Hudson*, 294 Mich App 261, 264; 817 NW2d 115 (2011). A finding is clearly erroneous if, although there is evidence to support it, this Court is left with a definite and firm conviction that a mistake has been made. *Id*.

## II. REASONABLE EFFORTS TO REUNIFY THE FAMILY

-1-

Preliminarily, as part of the mother's argument challenging the existence of a statutory ground for termination, she summarily asserts that petitioner opposed reunification from the beginning of this case and never sincerely engaged in providing reunification services. A party may not simply announce a position and then leave it up to this Court to discover and rationalize the basis for her claims, or unravel and elaborate for her potential arguments, and then search for authority either to sustain or reject her position, *Wilson v Taylor*, 457 Mich 232, 243; 577 NW2d 100 (1998), and failure to brief an issue adequately constitutes abandonment, *McIntosh v McIntosh*, 282 Mich App 471, 484; 768 NW2d 325 (2009). Because the mother provides only a single sentence in her appellate brief regarding this issue, without citation to any authority, she has abandoned this issue.

Even if the mother had properly framed this issue for appellate review, her argument is unsupported by the record. Before a court may contemplate termination of parental rights, the Department of Health and Human Services (DHHS) must make reasonable efforts to reunite the family. MCL 712A.19a(2). "The adequacy of the petitioner's efforts to provide services may bear on whether there is sufficient evidence to terminate a parent's rights." *In re Rood*, 483 Mich 73, 89; 763 NW2d 587 (2009).

In this case, the record does not support the mother's argument that the DHHS failed to make reasonable efforts to reunify her with the child. The trial court obtained jurisdiction over the child in December 2015, following which the mother was offered a treatment plan and provided with services for approximately three years. The purpose of a treatment plan is to facilitate the return of a child to his or her parent. *In re Mason*, 486 Mich 142, 156; 782 NW2d 747 (2010). Among the many services provided to the mother were: (1) a substance abuse assessment; (2) drug screening and bus passes for transportation to and from drug screening; (3) two psychological evaluations; (4) anger-management classes; (5) individual therapy; (6) mental-health therapy and bus passes or tokens for transportation to and from therapy; (7) foster-care supportive visitation with a designated visitation coach; (8) parent-mentor programming; and (9) assistance with the program titled *Keeping Families Together*. The trial court also provided the mother her own guardian ad litem. Moreover, the trial court denied an earlier petition to terminate the mother's parental rights in February 2018, which afforded the mother an additional opportunity to work toward reunification. Throughout the case, despite the many services offered, the mother's participation in services was sporadic and inconsistent. The mother has not shown that petitioner failed to make reasonable efforts to reunify her with her child.

## III. REASONABLE ACCOMMODATION

Additionally, the mother summarily asserts that she was diagnosed with cognitive deficits, but the DHHS never offered her additional help she may have needed. Again, because the mother provides only a single sentence in her appellate brief regarding this issue, without citation to any authority, she has abandoned this issue. See *Wilson*, 457 Mich at 243, and *McIntosh*, 282 Mich App at 484.

Even if the mother had properly raised this issue, the record does not support her claim that the DHHS did not reasonably accommodate her disability. Under the Americans with Disabilities Act (ADA), 42 USC 12101 *et seq.*, the DHHS is obligated to reasonably accommodate a parent's disability by reasonably modifying its services or programs to a

disabled parent. *In re Hicks*, 500 Mich 79, 85-86; 893 NW2d 637 (2017). In an effort to accommodate her cognitive deficits, the DHHS provided the mother with two psychological evaluations and a guardian ad litem. In addition, the DHHS designated a support person to assist the mother with making her appointments for the services offered to her. On the record before this Court, the mother has not shown that petitioner failed to reasonably accommodate her disability.

## IV. STATUTORY GROUNDS

The trial court found that grounds for terminating respondents' parental rights existed under MCL 712A.19b(3)(j), which authorizes termination of parental rights under the following circumstances:

> (3) The court may terminate a parent's parental rights to a child if the court finds, by clear and convincing evidence, 1 or more of the following:
>
> * * *
>
> (j) There is a reasonable likelihood, based on the conduct or capacity of the child's parent, that the child will be harmed if he or she is returned to the home of the parent.

With respect to § 19b(3)(j), either physical or emotional harm is sufficient to support termination under § 19b(3)(j), *In re Hudson*, 294 Mich App at 268, and a parent's failure to comply with the terms and conditions of her service plan is evidence that the child will be harmed if returned to the parent's home, *In re White*, 303 Mich App 701, 711; 846 NW2d 61 (2014).

## A. RESPONDENT-MOTHER

Regarding the mother, we note that the trial court's reliance on § 19b(3)(j) is supported by the mother's continued emotional instability and lack of parenting skills, which in turn affected her ability to meet the child's emotional needs. The trial court also discussed the mother's strained bond with the child. The DHHS presented evidence concerning the mother's inability to deal with stress during parenting visits, and how the visits negatively affected the child's behavior. Despite the fact that the child had been in care for three years and the mother had been provided with many services, the mother's therapist reported that the mother was still trying to be a "normal" parent. The mother's parenting mentor testified that the mother took suggestions well, but the mentor thought that the mother had made only minimal progress in applying what she had learned, even taking into account the mother's cognitive delays. After three years, the mother had not moved beyond supervised visits, and she demonstrated an inability to understand how the child's medical issues impacted his dietary needs. The trial court did not clearly err by finding that this ground for termination had been proven by clear and convincing evidence.

## B. RESPONDENT-FATHER

Regarding the father, the trial court's reliance on § 19b(3)(j) is supported by his failure to comply with the terms and conditions of his treatment plan, which is evidence that the child will be harmed if returned to the father's home. See *In re White*, 303 Mich App at 711. The father admitted that he continued to lack adequate housing as of the date of the termination trial. He would not allow the agency to make a home visit because he still had a broken sewer pipe to repair. He also continued to demonstrate an inability to accommodate the child's dietary needs related to his medical condition. Finally, the father did not recognize that consistently visiting his child was in the child's best interests, even after hearing reports of how his failure to visit consistently negatively affected the child. The trial court did not clearly err when it found that the evidence supported this ground for termination.

A trial court need only find clear and convincing evidence of one statutory ground for termination of parental rights. *In re VanDalen*, 293 Mich App at 139. Therefore, we need not address the additional statutory grounds for termination considered by the trial court, regarding either respondent.

## V. BEST-INTERESTS FACTORS

Respondents both argue that termination of their parental rights was not in the child's best interests. Factors to be considered when evaluating a child's best interests include "the child's bond to the parent, the parent's parenting ability, the child's need for permanency, stability, and finality, and the advantages of a foster home over the parent's home." *In re Olive/Metts*, 297 Mich App 35, 41-42; 823 NW2d 144 (2012) (cleaned up). A court may also consider whether it is likely "that the child could be returned to her parents' home within the foreseeable future, if at all." *In re Frey*, 297 Mich App 242, 248-249; 824 NW2d 569 (2012).

### A. RESPONDENT-MOTHER

In this case, the trial court found that the child had been lingering in care for three years and had a strong need for permanence and stability. Yet, the mother had made little progress toward overcoming the barriers to reunification. Although the mother participated in some services, her participation was inconsistent and she did not benefit from the services provided. The child was having behavioral issues and, according to the child's therapist, the issues were related to the length of time the child had been in care and the child was not likely to make progress toward resolving his issues until permanence could be established. Further, the child experienced anxiety about parental visits, and the child's behavioral issues became worse after parental visits. The therapist opined that the child would be at risk of harm to his physical and mental well-being if returned to respondents. Although the case manager acknowledged that a bond existed between the mother and the child, she further testified that the bond had become strained and that the child's need for stability outweighed the bond with his parents. The caseworker further stated that there was a bond between the child and his foster parents, whom the child would turn to for comfort, and she opined the foster parents were willing to adopt him. A preponderance of the evidence supports the trial court's finding that termination of the mother's parental rights was in the child's best interests.

### B. RESPONDENT-FATHER

The trial court noted that the child had a close bond with the father. The trial court also found, however, that the child's need for permanence and stability outweighed this bond. This finding is not clearly erroneous. The evidence indicated that the child's behavior was deteriorating because of the instability from being in care for three years, and his therapist testified that the child could not be expected to make any progress until permanence was established. The father had barely participated in services and he still did not have suitable housing. There was no reasonable likelihood that he would be able to provide the permanence and stability the child required within any reasonable period of time. Moreover, despite the bond that existed between the child and the father, the father failed to attend parenting time regularly, and he was unwilling to recognize the child's medical issues. The evidence supports the trial court's finding that termination of the father's parental rights was in the child's best interests.

Affirmed.

/s/ Brock A. Swartzle
/s/ Jane E. Markey
/s/ James Robert Redford