*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

SHEILA MARIE HUNTER,

        Plaintiff-Appellee,

v

STEPHEN CHRISTOPHER HUNTER,

        Defendant-Appellant.

UNPUBLISHED
June 29, 2023

Nos. 361228; 363254
St. Clair Circuit Court
Family Division
LC No. 21-000585-DM

Before: CAMERON, P.J., and JANSEN and BORRELLO, JJ.

PER CURIAM.

These consolidated appeals stem from the parties' divorce proceedings. In Docket No. 361228, defendant appeals as of right the judgment of divorce entered following a bench trial. Because defendant has not demonstrated any error requiring reversal, we affirm the judgment of divorce.

In Docket No. 363254, defendant appeals by leave granted[1] an order regarding his postjudgment motion. Defendant contends that the trial court erred by failing to hold plaintiff in contempt for violating the divorce judgment, failing to properly resolve the parties' disagreement regarding a legal custody issue, and refusing to lift a previously ordered parenting-time condition. We affirm the trial court's order regarding defendant's postjudgment motion.

## I. BACKGROUND

Plaintiff filed her complaint for divorce on March 31, 2021. The parties had one child together, JH, when this case began, but plaintiff was pregnant with the parties' second child, HH, who was born during the course of the proceedings. In May 2021, plaintiff obtained an ex parte personal protection order (PPO) against defendant based in part on allegations that defendant

---

[1] *Hunter v Hunter*, unpublished order of the Court of Appeals, entered November 9, 2022 (Docket No 363254). The order also consolidated the two appeals on this Court's own motion. *Id.*

physically assaulted her on St. Patrick's Day, a few weeks before she filed for divorce. The PPO proceedings were held before the same judge assigned the divorce proceedings.

At the evidentiary hearing on defendant's motion to terminate the PPO, the parties offered conflicting testimony about what occurred on St. Patrick's Day and other related matters. Plaintiff testified that on St. Patrick's Day, defendant was arguing with her about paying bills and pushed her in the stomach, pushing her off the bed and causing her to stand up. Plaintiff was pregnant at the time. Plaintiff also testified that defendant threw a toy train and car keys at her on other occasions. Defendant denied pushing plaintiff off the bed. Defendant claimed that he had threatened to call the police after plaintiff slammed his phone on the floor and broke the phone case. Subsequently, according to defendant, plaintiff reached inside the cast that defendant was wearing on his foot as the result of a surgical operation and squeezed hard while threatening to tell the police that defendant had hit her. Defendant denied that he threw other objects at plaintiff and claimed that he merely "tossed" them near her.

Finally, defendant acknowledged that he and plaintiff had argued after plaintiff found defendant's mother's prescription pain medication in the marital home, but defendant explained that his mother had accidentally left the medication at the house when she stayed there while plaintiff and defendant were on vacation. Plaintiff testified in rebuttal that defendant had admitted taking his mother's pain medication. The court found plaintiff credible, found defendant not credible, and denied defendant's motion to terminate the PPO.

HH was born in September 2021, and defendant claimed that he was not the biological father. Plaintiff had no doubt that defendant was the father. The divorce action proceeded to a bench trial in February 2022 to address issues concerning property division, child custody, parenting time, and support. At the time of trial, HH still had not met defendant. The trial court issued a written opinion following the trial explaining its decisions and factual findings. After making certain determinations regarding the division of property, the trial court awarded plaintiff sole physical custody of both children and sole legal custody of HH. With respect to legal custody of JH, the trial court ruled that this issue would be "bifurcated." Importantly, the trial court ruled that plaintiff would have sole legal custody of JH as long as the PPO remained in effect, after which the parties would share joint legal custody of JH. Defendant was awarded parenting time with JH "consistent with the St. Clair County Friend of Court parenting time schedule including the holiday schedule." The trial court awarded parenting time for HH to defendant that would initially be supervised for 6 months and gradually transition to parenting time consistent with that of JH. The judgment of divorce was entered on March 17, 2022. Defendant filed a claim of appeal, which was assigned Docket No. 361228.

On August 18, 2022, defendant moved in the trial court for a restraining order barring the enrollment of JH in a Catholic school, an order to show cause, and removal or modification of the supervision condition of his parenting time with HH. Defendant asserted that the PPO that was in effect at the time the judgment of divorce had expired on May 20, 2022, that he and plaintiff consequently had joint legal custody of JH, that defendant's right to joint legal custody of JH was not impacted by a second PPO plaintiff obtained against him on July12, 2022, and that plaintiff had violated the judgment of divorce by unilaterally enrolling JH in a Catholic school contrary to defendant's wishes and without consulting him. Defendant asserted that the trial court was required to decide the matter because the parties could not agree where JH would attend school.

And defendant sought to have plaintiff held in contempt for her failure to communicate with defendant about where JH would attend school. Finally, defendant requested that the court terminate or modify the supervision requirement for his parenting time with HH because plaintiff's parents had refused to supervise the visits, which resulted in missed visits for defendant.

A week later, the trial court held a hearing, at which the parties' attorneys presented oral arguments. The trial court denied defendant's motion to modify his supervised parenting time conditions, reasoning that defendant had not taken the necessary steps to form a bond with HH. With respect to the school enrollment issue, the trial court ruled that defendant could not challenge plaintiff's choice to enroll JH in a specific school because plaintiff had completed the enrollment while she still had sole legal custody. The trial court ordered plaintiff to provide supporting evidence that the enrollment was completed before May 20, 2022, and indicated that it would only hold an evidentiary hearing if plaintiff could not establish that enrollment was complete by that date. Plaintiff apparently satisfied this requirement, resulting in a denial of defendant's motions for a show cause order and an order barring the enrollment of JH in the Catholic school. This Court granted defendant leave to appeal this order in Docket No. 363254.

## II. PROPERTY DIVISION

Defendant argues on appeal that the trial court's property division was inequitable because of its mistreatment of certain assets and debts.

Our appellate review is governed by the following standards:

> In deciding issues on appeal involving division of marital property, this Court first reviews the trial court's findings of fact. Findings of fact, such as a trial court's valuations of particular marital assets, will not be reversed unless clearly erroneous. A finding is clearly erroneous if, after a review of the entire record, the reviewing court is left with the definite and firm conviction that a mistake was made. If the trial court's findings of fact are upheld, this Court must decide whether the dispositive ruling was fair and equitable in light of those facts. The dispositional ruling is discretionary and will be affirmed unless this Court is left with a firm conviction that the division was inequitable. [*Butler v Simmons-Butler*, 308 Mich App 195, 207-208; 863 NW2d 677 (2014) (citations omitted).]

"The distribution of property in a divorce is controlled by statute." *Reeves v Reeves*, 226 Mich App 490, 493; 575 NW2d 1 (1997). MCL 552.19 provides that "[u]pon . . . a divorce from the bonds of matrimony . . ., the court may make a further judgment for restoring to either party the whole, or such parts as it shall deem just and reasonable, of the real and personal estate that shall have come to either party by reason of the marriage, or for awarding to either party the value thereof, to be paid by either party in money." "Generally, the marital estate is divided between the parties, and each party takes away from the marriage that party's own separate estate with no invasion by the other party." *Reeves*, 226 Mich App at 494. Marital property is generally "that which is acquired or earned during the marriage," while separate property is generally "that which is obtained or earned before the marriage." *Cunningham v Cunningham*, 289 Mich App 195, 201; 795 NW2d 826 (2010). "The goal in distributing marital assets in a divorce proceeding is to reach

an equitable distribution of property in light of all the circumstances." *Berger v Berger*, 277 Mich App 700, 716-717; 747 NW2d 336 (2008).

"The trial court need not divide the marital estate into mathematically equal portions, but any significant departure from congruence must be clearly explained." *Id*. at 717. In determining the distribution of assets, a court may consider the following factors in addition to others that may be relevant depending on the facts and circumstances of the case:

> (1) duration of the marriage, (2) contributions of the parties to the marital estate, (3) age of the parties, (4) health of the parties, (5) life status of the parties, (6) necessities and circumstances of the parties, (7) earning abilities of the parties, (8) past relations and conduct of the parties, and (9) general principles of equity. [*Sparks v Sparks*, 440 Mich 141, 159-160; 485 NW2d 893 (1992).]

The court need only consider factors that are relevant to the particular case. *Id*. Furthermore, although the property division must be equitable, it does not need to be equal. *Id*. at 159.

With these background legal principles in mind, we now turn to defendant's specific appellate arguments regarding the property distribution.

## A. BMW DEBT

Defendant first asserts that although the parties actually owed over $21,000 for the BMW that was awarded to defendant, the trial court erred by stating in its opinion that the BMW had no associated debt and thereby tacitly assigning this debt to defendant without considering the effect of the debt on the property division.

However, the parties stipulated that defendant would be awarded their 2016 BMW and that plaintiff would be awarded their 2019 Dodge Caravan. The stipulation did not address any debt associated with either vehicle. Defendant would have known about the debt on the BMW when he negotiated this stipulated agreement with plaintiff. "It is settled that error requiring reversal may only be predicated on the trial court's actions and not upon alleged error to which the aggrieved party contributed by plan or negligence." *Lewis v LeGrow*, 258 Mich App 175, 210; 670 NW2d 675 (2003). Defendant therefore has not demonstrated error requiring reversal with respect to the BMW debt.[2]

## B. PLAINTIFF'S RETIREMENT ACCOUNT

Next, defendant argues that the trial court erred with respect to its treatment of funds that plaintiff testified she used from her retirement account after initiating the divorce. However, in

---

[2] Moreover, although it does not bear on our decision, we note that the stipulated agreement regarding these two vehicles, though neither the trial court or the parties specifically state what model of BMW, appears equitable given that defendant admits that the two vehicles had a similar value and that plaintiff assumed responsibility for an even larger debt with respect to the Caravan.

advancing this argument, defendant only cites evidence that he provided to the trial court with his motion for reconsideration to claim that plaintiff withdrew more money from her retirement account than she claimed in her testimony. Issues first brought to the court's attention in a motion for reconsideration are not properly preserved for appeal. *Demski v Petlick*, 309 Mich App 404, 441; 873 NW2d 596 (2015). Issues that are not timely raised are generally treated as waived for appellate review. *Walters v Nadell*, 481 Mich 377, 387; 751 NW2d 431 (2008). "Trial courts are not the research assistants of the litigants; the parties have a duty to fully present their legal arguments to the court for its resolution of their dispute." *Id*. at 388.

Because defendant has not demonstrated that he timely presented this issue and alleged supporting evidence before the trial court, defendant has not established that this unpreserved issue should be reviewed on appeal to prevent a miscarriage of justice. *Id*. at 387-388. The trial is not a dress rehearsal for a party's subsequent attacks on the judgment of divorce. See *Lewis*, 258 Mich App at 210 ("It is settled that error requiring reversal may only be predicated on the trial court's actions and not upon alleged error to which the aggrieved party contributed by plan or negligence.").

## C. DEFENDANT'S RETIREMENT ACCOUNT

Defendant next argues that the trial court erred by ordering that plaintiff's half of defendant's retirement account to which she was entitled be paid from defendant's portion of the proceeds from the marital home. Defendant asserts that the trial court's order will result in greater tax liability to defendant and an inequitably greater distribution of this retirement account to plaintiff. However, defendant assumes his conclusion and has not directed our attention to any evidence that was presented to the trial court from which it could have determined the extent of any tax consequences with respect to this specific retirement account. Therefore, this issue is abandoned. *Berger*, 277 Mich App at 712 ("A party abandons a claim when it fails to make a meaningful argument in support of its position."). "It is not sufficient for a party simply to announce a position or assert an error and then leave it up to this Court to discover and rationalize the basis for his claims, or unravel and elaborate for him his arguments, and then search for authority either to sustain or reject his position." *Wilson v Taylor*, 457 Mich 232, 243; 577 NW2d 100 (1998) (quotation marks and citation omitted).

## D. DOWN PAYMENT FOR MARITAL HOME

Defendant next argues that the trial court erroneously determined that the $40,000 the parties received from defendant's parents toward the down payment for the parties' marital home was a gift rather than a loan. But defendant completely ignores the evidence that the parties and defendant's parents signed a letter indicating to the bank when the home was purchased that the $40,000 was a gift that did not need to be repaid. According to plaintiff, the bank required this letter in order to approve the loan. Defendant has not explained or provided any legal authority to support his contention that defendant's choice to make "payments" to his parents transformed the gift into a loan. Defendant has abandoned this issue. *Berger*, 277 Mich App at 712; *Wilson*, 457 Mich at 243. Even if defendant had not abandoned this issue, defendant has not demonstrated error requiring reversal. *Butler*, 308 Mich App at 207-208.

## E. EQUITABLE DISTRIBUTION

Lastly, defendant argues that the overall property distribution was inequitable. Defendant's claim is premised on the above unsubstantiated claims of error. In light of our determinations that defendant has not demonstrated error requiring reversal with respect to any of his alleged claims of error, defendant has therefore failed to establish error requiring reversal with respect to the property division generally. *Id.*

## III. CHILD CUSTODY AND PARENTING TIME

Next, defendant argues that the trial court's best-interest determination regarding custody and parenting time of the parties' children was against the great weight of the evidence.

## A. STANDARDS OF REVIEW

"Under the Child Custody Act, MCL 722.21 *et seq.*, 'all orders and judgments of the circuit court shall be affirmed on appeal unless the trial judge made findings of fact against the great weight of evidence or committed a palpable abuse of discretion or a clear legal error on a major issue.' " *Pierron v Pierron*, 486 Mich 81, 85; 782 NW2d 480 (2010), quoting MCL 722.28. "Under this standard, a reviewing court should not substitute its judgment on questions of fact unless the factual determination clearly preponderate[s] in the opposite direction." *Id.* (quotation marks and citation omitted; alteration in original). "This Court will defer to the trial court's credibility determinations, and the trial court has discretion to accord differing weight to the best-interest factors." *Berger*, 277 Mich App at 705. "An abuse of discretion standard applies to the trial court's discretionary rulings such as custody decisions." *Pennington v Pennington*, 329 Mich App 562, 570; 944 NW2d 131 (2019). With respect to a trial court's custody decision, which is "entitled to the utmost level of deference," an abuse of discretion occurs "when the trial court's decision is so palpably and grossly violative of fact and logic that it evidences a perversity of will, a defiance of judgment, or the exercise of passion or bias." *Berger*, 277 Mich App at 705-706.

## B. CREDIBILITY FINDING

Defendant first appears to assert that the trial court improperly took judicial notice of its assessment of defendant's credibility in the related PPO proceedings, over which the trial judge in the instant divorce action also presided, and thus applied this negative credibility assessment to defendant throughout the divorce proceedings without proper evidentiary support. However, defendant does not cite any legal authority supporting his contention of error.[3] "It is not sufficient for a party simply to announce a position or assert an error and then leave it up to this Court to discover and rationalize the basis for his claims, or unravel and elaborate for him his arguments, and then search for authority either to sustain or reject his position." *Wilson*, 457 Mich at 243 (quotation marks and citation omitted). Defendant has abandoned this argument.

---

[3] Defendant merely cites legal authority setting forth general background rules, none of which defendant claims were violated by the trial court.

## C. BEST-INTEREST FACTORS

Next, defendant challenges the trial court's analysis of certain best-interest factors, which are contained in MCL 722.23. A "trial court's findings . . . with respect to each factor regarding the best interest of a child under MCL 722.23 should be affirmed unless the evidence clearly preponderates in the opposite direction." *Berger*, 277 Mich App at 705.

First, defendant asserts that the trial court erred with respect to factor (a) because it failed to make findings under this factor regarding one of the parties' two children. Under MCL 722.23(a), the court is to consider the "love, affection, and other emotional ties existing between the parties involved and the child." Defendant's position is plainly belied by the record. The trial court's written opinion expressly contains findings under factor (a) for both children. Defendant has not demonstrated that the trial court's findings on this factor should be reversed. *Berger*, 277 Mich App at 705.

Next, defendant challenges the trial court's findings under MCL 722.23(c), which contemplates the "capacity and disposition of the parties involved to provide the child with food, clothing, medical care or other remedial care recognized and permitted under the laws of this state in place of medical care, and other material needs." The trial court found that plaintiff had a constant source of income and provided for the family throughout the marriage, while defendant had a sporadic employment history. The trial court found that defendant was currently "still not earning an income and is borrowing money from his parents to support himself." Thus, the court concluded that this factor favored plaintiff.

On appeal, defendant's arguments focus primarily on explaining and justifying his periods of unemployment. Defendant contends that he is capable of providing for the material needs of the children simply because he is a licensed attorney and has applied for jobs. Defendant's arguments are more properly understood as an attempt to relitigate the issue and an expression of his belief that the trial court should have weighed the evidence differently than it did. These types of arguments "do not overcome the deference due the trial court in making such determinations." *Berger*, 277 Mich App at 711. We do not find error in the record and defendant's arguments to the contrary fail to show that the evidence clearly preponderates in the opposite direction. Accordingly, we glean no basis to conclude that the trial court's findings on this factor should be reversed. *Berger*, 277 Mich App at 705.

Defendant next challenges the trial court's findings under MCL 722.23(d), which involves the "length of time the child has lived in a stable, satisfactory environment, and the desirability of maintaining continuity." Defendant argues that the trial court erred by finding that this factor favored plaintiff because, according to defendant, plaintiff was actually the party that "created the instability in the children's housing." With this argument, defendant ignores that plaintiff obtained a PPO against him on the basis of defendant's assaultive behavior. Again, defendant's attempts to relitigate issues of evidentiary weight do not demonstrate that the evidence clearly preponderates in the other direction, and defendant has not shown that the trial court's findings on this factor should be reversed. *Berger*, 277 Mich App at 705, 711.

Next, defendant challenges the trial court's findings under MCL 722.23(f), which considers the "moral fitness of the parties involved." Under this factor, "[t]rial courts must look to the parent-

child relationship and the effect that the conduct at issue will have on that relationship." *Berger*, 277 Mich App at 713 (quotation marks and citation omitted). The "issue is not who is the morally superior adult, but rather the parties' relative fitness to provide for their child, given the moral disposition of each party as demonstrated by individual conduct." *Id.* (quotation marks and citation omitted). Here, in its findings under factor (f), the trial court focused on evidence involving defendant's use of controlled substances that were not prescribed to him and defendant's extra-marital affairs to imply that defendant was not morally fit. The trial court found that this factor favored plaintiff. However, the trial court did not discuss the effects of defendant's conduct on the parent-child relationship. Thus, the trial court erred by failing to apply the proper legal analysis under this factor. *Berger*, 277 Mich App at 713.

Defendant also challenges the trial court's findings under MCL 722.23(j), which considers the "willingness and ability of each of the parties to facilitate and encourage a close and continuing parent-child relationship between the child and the other parent or the child and the parents." However, defendant again concocts a straw-man basis for the court's ruling and attempts to relitigate issues of witness credibility and evidentiary weight.

The trial court found that this factor favored plaintiff with respect to HH and that the parties were equal on this factor with respect to JH. The trial court reasoned that plaintiff and defendant had each testified about their current encouragement of the relationship between JH and the other parent, as well as their commitment to continue to encourage that relationship. With respect to HH, the trial court cited plaintiff's testimony that she wanted defendant to take an interest in HH but was concerned about defendant's position that he was not HH's biological father and did not want to pay child support for HH. The trial court also cited defendant's testimony that he had not changed his position regarding HH but wanted to see him nonetheless. The trial court found that defendant's testimony did not evidence a desire to form a strong bond with HH.

On appeal, defendant does not challenge the trial court's finding relative to HH and instead appears to focus only the trial court's finding that the parties were equal with respect to JH under factor (j). Defendant discusses a dispute from summer 2021 between the parties over parenting time, arguing that this was evidence that plaintiff intentionally interfered with defendant's parenting time and was not actually willing to facilitate and encourage a close relationship between JH and defendant.

But defendant mischaracterizes the record evidence and cherry picks facts to support his narrative that plaintiff had intentionally prevented him from having parenting time during the summer of 2021. The PPO prohibited the child from being removed from mother's care without a custody and parenting time order. Defendant's arguments on this issue again ignore the existence of a PPO during that time which prohibited his parenting time until a custody and parenting time order was in place. No such order was in place when the parties addressed these issues at the July 29, 2021 hearing, after which the trial court entered a temporary parenting time order. Thus, defendant disingenuously attempts to mischaracterize a legitimate parenting time dispute between the parties as evidence that plaintiff was intentionally preventing defendant from having parenting time to which he was entitled. Moreover, defendant entirely omits the fact that his *own conduct* resulted in the PPO which caused him to have limited parenting time for a period of time. Accordingly, defendant has not demonstrated that the trial court's findings on this factor should be reversed. *Berger*, 277 Mich App at 705, 711.

Lastly, defendant challenges the trial court's finding under factor (k), which considers "[d]omestic violence, regardless of whether the violence was directed against or witnessed by the child." MCL 722.23(k). The trial court found that this factor favored plaintiff because the divorce complaint was filed shortly after the incident where defendant assaulted plaintiff while she was pregnant, which led to plaintiff obtaining a PPO against defendant. On appeal, defendant argues that this finding was erroneous because plaintiff had "consistently testified" that defendant "pushed" her in the stomach and there was "no wall involved," but the trial court nonetheless stated in its written opinion that "defendant kicked the plaintiff in the stomach while she was pregnant with [HH] and shoved her against a wall and verbally abused her." Defendant also complains that the trial court erroneously found that the argument that day was motivated by defendant's anger at plaintiff for reducing her work hours while pregnant when, according to defendant, the argument was actually about how to spend money received from a tax credit. The details about which defendant quibbles on appeal as an attempt to relitigate the issue are immaterial to us as the record reveals that plaintiff obtained a PPO against defendant based on an assault that occurred shortly before plaintiff filed for divorce. Accordingly, defendant has not shown that the trial court's finding on this factor should be reversed. *Berger*, 277 Mich App at 705, 711.

Although the trial court erred in its analysis under factor (f), this error was harmless because none of the factors favored defendant, most of the factors favored plaintiff, and the parties were equal on three factors regarding JH and one factor regarding HH. See *Maier v Maier*, 311 Mich App 218, 227; 874 NW2d 725 (2015) ("In order for plaintiff to show that she should have been awarded custody, it is not only necessary for her to show that the trial court erred in its consideration of some of the factors that favored defendant, but also that some of the factors favored her.").

## D. CUSTODY AND PARENTING TIME RULING REGARDING HH

Defendant also argues that the trial court erred by awarding plaintiff sole legal custody of HH when both parties requested joint legal custody and by requiring supervised parenting time regarding HH for a period far longer than was requested by plaintiff.

MCL 722.26a governs matters of joint custody, providing in relevant part as follows:

(1) In custody disputes between parents, the parents shall be advised of joint custody. At the request of either parent, the court shall consider an award of joint custody, and shall state on the record the reasons for granting or denying a request. In other cases joint custody may be considered by the court. The court shall determine whether joint custody is in the best interest of the child by considering the following factors:

(a) The factors enumerated in section 3 [MCL 722.23].

(b) Whether the parents will be able to cooperate and generally agree concerning important decisions affecting the welfare of the child.

(2) *If the parents agree on joint custody, the court shall award joint custody unless the court determines on the record, based upon clear and convincing evidence, that joint custody is not in the best interests of the child.*

\* \* \*

(7) As used in this section, "joint custody" means an order of the court in which 1 or both of the following is specified:

(a) That the child shall reside alternately for specific periods with each of the parents.

(b) That the parents shall share decision-making authority as to the important decisions affecting the welfare of the child. [Emphasis added.]

With respect to parenting time, MCL 722.27a provides in relevant part:

(1) Parenting time shall be granted in accordance with the best interests of the child. It is presumed to be in the best interests of a child for the child to have a strong relationship with both of his or her parents. Except as otherwise provided in this section, parenting time shall be granted to a parent in a frequency, duration, and type reasonably calculated to promote a strong relationship between the child and the parent granted parenting time.

(2) *If the parents of a child agree on parenting time terms, the court shall order the parenting time terms unless the court determines on the record by clear and convincing evidence that the parenting time terms are not in the best interests of the child.*

\* \* \*

(7) The court may consider the following factors when determining the frequency, duration, and type of parenting time to be granted:

(a) The existence of any special circumstances or needs of the child.

(b) Whether the child is a nursing child less than 6 months of age, or less than 1 year of age if the child receives substantial nutrition through nursing.

(c) The reasonable likelihood of abuse or neglect of the child during parenting time.

(d) The reasonable likelihood of abuse of a parent resulting from the exercise of parenting time.

(e) The inconvenience to, and burdensome impact or effect on, the child of traveling for purposes of parenting time.

(f) Whether a parent can reasonably be expected to exercise parenting time in accordance with the court order.

(g) Whether a parent has frequently failed to exercise reasonable parenting time.

(h) The threatened or actual detention of the child with the intent to retain or conceal the child from the other parent or from a third person who has legal custody. A custodial parent's temporary residence with the child in a domestic violence shelter shall not be construed as evidence of the custodial parent's intent to retain or conceal the child from the other parent.

(i) *Any other relevant factors*.

\* \* \*

(9) *A parenting time order may contain any reasonable terms or conditions* that facilitate the orderly and meaningful exercise of parenting time by a parent, including 1 or more of the following:

(a) Division of the responsibility to transport the child.

(b) Division of the cost of transporting the child.

(c) Restrictions on the presence of third persons during parenting time.

(d) Requirements that the child be ready for parenting time at a specific time.

(e) Requirements that the parent arrive for parenting time and return the child from parenting time at specific times.

(f) *Requirements that parenting time occur in the presence of a third person or agency*.

(g) Requirements that a party post a bond to assure compliance with a parenting time order.

(h) Requirements of reasonable notice when parenting time will not occur.

(i) Any other reasonable condition determined to be appropriate in the particular case. [Emphasis added.]

Here, the trial court found that defendant had never attempted to see HH and had maintained throughout the proceedings that he was not HH's biological father. Because of defendant's continuing claims that he was not HH's biological father, the trial court determined that defendant was not capable of making important decisions affecting HH's welfare and the court granted sole legal custody of HH to plaintiff. Not surprisingly, the trial court ordered that

defendant's parenting time with HH would begin "gradually" because HH had not had any "exposure to the defendant." The trial court ordered that defendant's parenting time with HH would be supervised for 6 months.

On appeal, defendant contends that these rulings were erroneous because both parties had requested joint legal custody of HH and plaintiff had only requested 1 month of supervised parenting time.

HH was born in September 2021, and the divorce trial was held in February 2022. At the trial, plaintiff testified that defendant had never met HH and had never asked to meet HH. Defendant admitted in his trial testimony that he had never even asked to see HH or requested parenting time with him. Defendant's testimony also indicated that he had not changed his position that he was not HH's biological father, but he testified that he still wanted to see HH. Plaintiff testified that she was certain that defendant was HH's biological father. Plaintiff testified that she wanted defendant's parenting time with HH to be supervised because defendant was a "complete stranger" to HH. Although defendant minimizes the importance of the fact that there was existing relationship between defendant and HH since HH had never met defendant, this factual characterization on appeal does not demonstrate that the trial court's decisions regarding custody and parenting time were not in HH's best interest. Defendant has failed to establish the existence of error requiring reversal. *Pierron*, 486 Mich at 85.

## E. DEFENDANT'S CONTEMPT MOTION

Defendant next argues that the trial court erred by failing to hold plaintiff in contempt for violating the judgment of divorce by enrolling JH in a Catholic school. Our Supreme Court has held that a party may not by general appeal seek review of a circuit court's determination "refusing to punish for contempt." *Mason v Siegel*, 301 Mich 482, 484-485; 3 NW2d 851 (1942). Hence, defendant's argument does not present an issue cognizable for our appellate review.

## F. JH'S SCHOOL

Defendant next argues that the trial court erred by refusing to address his challenge to JH's enrollment in Catholic school without holding a hearing. We conclude that defendant's argument lacks merit.

We agree that "the Child Custody Act provides that when parents share joint legal custody . . . the parents shall share decision-making authority as to the important decisions affecting the welfare of the child." *Marik v Marik*, 325 Mich App 353, 360; 925 NW2d 885 (2018) (quotation marks and citation omitted). When parents with joint legal custody "cannot agree on an important decision, such as a change of the child's school, the court is responsible for resolving the issue in the best interests of the child." *Id*. (quotation marks and citation omitted). In circumstances where the parents share joint legal custody and the parties cannot agree where the child should attend school, the non-custodial parent has a right to an evidentiary hearing to resolve the matter. See *Marik*, 325 Mich App at 356, 363-364, 363 n2.

Here, defendant again mischaracterizes the record. Defendant concedes on appeal that plaintiff had sole legal custody at the time she enrolled JH in the Catholic school.[4] Therefore, the trial court correctly concluded that plaintiff was entitled under the judgement of divorce to enroll JH in school without first consulting defendant. Defendant, unhappy with the enrollment decision that had already been made, moved the trial court for an evidentiary hearing to hold plaintiff in contempt of court and for an order to restrain plaintiff from enrolling JH in Catholic school shortly after defendant was awarded joint legal custody. Defendant's basis for his motion before the trial court was that plaintiff lacked authority under the judgment of divorce to unilaterally enroll JH in Catholic school, a fallacious assertion that defendant is careful not to make on appeal. Instead, defendant reimagines his trial court motion to have raised nothing other than a dispute between parents with joint legal custody concerning the decision about whether their child will attend a new public or private school. But, there was nothing routine about Defendant's request to the trial court; he inaccurately claimed that plaintiff lacked authority to make a unilateral enrollment decision and then demanded a hearing on his "motion for restraining order barring enrollment of minor child in [Catholic school] and for order to show cause." We cannot fault the trial court for failing to hold a hearing on an issue not raised by defendant.

## G. PARENTING TIME SUPERVISION

Defendant also challenges the trial court's ruling denying his motion to modify the conditions of his parenting time with HH to remove the supervision requirement.

This Court has held that "consistently with a trial court's authority to adopt, revise, or revoke a condition whenever it is in the best interests of the child to do so, . . . a party requesting a change to an existing condition on the exercise of parenting time must demonstrate proper cause or a change in circumstances that would justify a trial court's determination that the condition in its current form no longer serves the child's best interests." *Kaeb v Kaeb*, 309 Mich App 556, 571-572; 873 NW2d 319 (2015). Defendant on appeal argues that the trial court erred by not holding an evidentiary hearing to address his motion. However, "[a]lthough the threshold consideration of whether there was proper cause or a change of circumstances might be fact-intensive, the court need not necessarily conduct an evidentiary hearing on the topic." *Corporan v Henton*, 282 Mich App 599, 605; 766 NW2d 903 (2009). Thus, contrary to his contention, defendant has not demonstrated a legal error requiring reversal. *Pierron*, 486 Mich at 85.[5]

---

[4] Plaintiff concedes on appeal that "Appellee-Mother was granted sole legal custody for a period of two months between March 17, 2022 and May 20, 2022, as a result of a PPO. During that time, she enrolled JH in a Catholic school, knowing that Appellant-Father objected to the child being raised Catholic.

[5] Moreover, under the circumstances of this case, the fact that a different third party would need to be found to supervise defendant's parenting time does not "demonstrate proper cause or a change in circumstances that would justify a trial court's determination that the condition [of supervision for a designated period] in its current form no longer *serves the child's best interests*." *Kaeb*, 309 Mich App at 571-572 (emphasis added).

## IV.  REASSIGNMENT ON REMAND

Defendant asks this Court to order that the proceedings on remand occur before a different judge.  Defendant accuses the trial judge of treating him unfairly and mischaracterizing evidence to fit the trial judge's "narrative."  However, defendant has not demonstrated any basis on which we would remand to a different judge.  The record reveals that the trial court painstakingly went through the record, made findings of fact that are clear and concise, and with the exception of not properly employing the analytical frame work in matters involving a matter on which the parties cannot agree, we find no error in any other ruling made by the trial court.  Additionally, we discern no bias or indication that the trial court will have any difficulty setting aside its previous finding.  All defendant has demonstrated is that the trial court ruled contrary to defendant's position on certain matters and that the trial court committed an error requiring remand.  "We may remand to a different judge if the original judge would have difficulty in putting aside previously expressed views or findings, if reassignment is advisable to preserve the appearance of justice, and if reassignment will not entail excessive waste or duplication." *Bayati v Bayati*, 264 Mich App 595, 602-603; 691 NW2d 812 (2004).  However, "we will not remand to a different judge merely because the judge came to the wrong legal conclusion." *Id*. at 603.  "Repeated rulings against a party, no matter how erroneous, or vigorously or consistently expressed, are not disqualifying." *Id*.  Defendant's complaints in this case do not demonstrate that reassignment to a different judge is warranted.

## V.  SANCTIONS FOR VEXATIOUS APPEAL

Plaintiff argues that defendant's appeal with respect to the trial court's ruling on the issue of JH's school was vexations such that plaintiff is entitled to sanctions under MCR 7.216(C)(1). The court rule provides, in part:

> The Court of Appeals may . . . on the motion of any party . . . assess actual and punitive damages or take other disciplinary action when it determines that an appeal or any of the proceedings in an appeal was vexatious because
>
> (a) the appeal was taken for purposes of hindrance or delay or without any reasonable basis for belief that there was a meritorious issue to be determined on appeal . . . .  [MCR 7.216(C)(1)(a).]

Although we affirm the trial court's denial of defendant's motion for postjudgment relief, we disagree that defendant's appeal as to that issue is worthy of sanctions.

## VI.  CONCLUSION

In Docket No. 361228, we affirm the divorce judgment.  In Docket No. 363254, we affirm the trial court's order regarding defendant's postjudgment motion.  We do not retain jurisdiction. No costs are awarded.  MCR 7.219.

/s/ Thomas C. Cameron
/s/ Kathleen Jansen

-14-